30 P.3d 590 (2001)
J.L.P., Appellant,
v.
V.L.A., Appellee.
Nos. S-9239, S-9240.
Supreme Court of Alaska.
September 14, 2001.
*592 J.L.P., pro se, Copper Center.
V.L.A., pro se, Anchorage.
Before FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

OPINION
CARPENETI, Justice.

I. INTRODUCTION

After the 1992 divorce of Veronica[1] and Jerry, the parties' two children, Dora and Rodney, lived with Veronica. In 1997 Veronica sent Rodney to live with Jerry when the situation between Rodney and his stepfather became troubled. Jerry moved to modify the 1992 custody agreement, asking for divided custody and for primary physical custody of Rodney. Veronica later moved for sole legal custody of Dora. Both parties moved to modify child support. Superior Court Judge Rene J. Gonzalez granted legal and physical custody of Rodney to Jerry, left Dora in the shared legal custody of both parents and her primary physical custody with Veronica, required both parents to be equally responsible for the children's medical costs, denied Jerry's motion for attorney's fees, and set the amount of child support and its effective date. Both parties appeal various aspects of these rulings. We affirm the superior court's rulings in all respects except as to uncovered health care costs for the children that are in excess of $5,000. We remand on that sole issue.

*593 II. FACTS AND PROCEEDINGS

A. Facts

Veronica and Jerry were divorced in 1992. They reached a settlement agreement that was incorporated into their divorce decree. It provided that they would have joint legal custody of their two minor children, Dora and Rodney. The agreement also gave Veronica primary physical custody of the children. Veronica and the children lived together in Anchorage until March 2, 1997 when, due to problems between Rodney and his stepfather, Veronica sent Rodney to live with his father in Copper Center with almost no prior notice. Dora remained with Veronica. By all accounts, Rodney's move to live with his father has been satisfactory. Dora expressed a desire to remain with her mother, even though she had encountered problems with substance abuse and her relationship with her stepfather was, at times, troubled.

B. Proceedings

1. Modification of custody

On May 13, 1997, after Rodney had lived with Jerry for over two months, Jerry moved to modify the 1992 custody agreement, seeking divided custody and primary physical custody of Rodney. On August 17, 1998 Veronica filed a motion to modify custody of Dora, seeking sole legal custody of her daughter.[2] Superior Court Judge Rene J. Gonzalez ordered a child custody investigation. On October 14, 1998 the custody investigator recommended that Jerry be awarded sole legal and primary physical custody of Rodney and that Veronica be awarded sole legal and primary physical custody of Dora.
The case came on for trial in October 1998. Following trial, Judge Gonzalez granted Jerry's motion for primary physical custody of Rodney and, sua sponte, awarded him sole legal custody of Rodney as well. The court denied Veronica's motion for sole legal custody of Dora. The court's order addressed Dora's circumstances, including her treatment for substance abuse and the confrontations between Dora and her stepfather, and concluded that "modification of her legal custody would not serve her welfare and best interests." The court also ordered the parties to share the children's medical expenses equally. Veronica retained primary physical custody of Dora.
On November 3, 1998 Jerry filed a motion for reconsideration of the court's order that he pay half the cost of Dora's treatment for substance abuse and depression. He argued that Veronica had denied him his "rightful participation in the health care of [our] daughter" and therefore Veronica should be responsible financially for it and that it was simply too expensive for him to shoulder. The superior court denied this motion on November 8. On November 13 Jerry filed a motion for sole legal custody of Dora. The superior court denied this motion.

2. Modification of support payments

While the custody modification motions were pending, the superior court issued an interim child support order on October 2, 1997, based on the parties' 1996 incomes, requiring Jerry to pay $165 per month, effective March 2, 1997. In the October 27, 1998 order granting Jerry sole legal and primary custody of Rodney, the court recalculated the child support obligation using 1997 incomes and ordered that Veronica pay $90.25 per month, without discussing the effective date of her obligation. On March 2, 1999, the court issued an amended order setting the effective date of the modified child support order as June 1, 1997. Veronica moved for reconsideration of the effective date of her child support obligation. Her motion was denied.

*594 3. Request for attorney's fees

On October 23, 1998, while the custody motions were pending, Jerry amended his earlier-filed motion for attorney's fees, seeking reimbursement from Veronica for costs incurred to modify custody of Rodney. Jerry has proceeded pro se in these disputes with the exception of the original divorce action and a brief period in 1997. The superior court denied the motion on November 5. Jerry moved for reconsideration, which the court denied.
Jerry appeals the denial of his motion for legal custody of Dora, the denial of his motion that Veronica be responsible for all of Dora's medical costs, and the denial of his motion for attorney's fees. Veronica cross-appeals the denial of her motion concerning the effective date of child support and the amount of child support.

III. STANDARDS OF REVIEW

Trial courts are vested with broad discretion in child custody matters.[3] We will reverse a lower court's decision regarding child custody modification only if the lower court abuses its discretion or if its controlling factual findings are clearly erroneous.[4] A trial court abuses its discretion if it fails to consider statutorily mandated factors, assigns too much weight to some of the factors, or considers improper factors.[5] A finding of fact is clearly erroneous only when a review of the entire record leaves us with a definite and firm conviction that the trial court has made a mistake.[6]
"With respect to modification of custody and visitation orders, we review the denial of a motion for attorney's fees for abuse of discretion."[7] "The trial court's discretion in awarding attorney's fees is broad and ... will not be disturbed on appeal unless it is `arbitrary, capricious, manifestly unreasonable, or stems from an improper motive.'"[8]
The interpretation of Alaska Civil Rules governing child support orders is reviewed de novo; we will adopt the rule of law that is most persuasive in light of precedent, reason, and policy.[9] A trial court's decision to modify a child support award will not be disturbed unless the trial court abused its discretion.[10] We will set aside a lower court's factual findings only when they are clearly erroneous.[11]

IV. DISCUSSION

A. The Superior Court Did Not Abuse Its Discretion in Denying Jerry's Motion for Modification of Legal Custody.

The superior court denied both Jerry's motion for modification of Dora's legal custody and his motion for reconsideration of that order without offering any reasons. Jerry argues that the trial court abused its discretion in issuing these orders because: (1) it did not conduct a "complete custody modification proceeding, which afforded him the opportunity to present evidence needed for the court to make an informed decision that was in the best interest of [Dora]"; (2) it made "no mention of any of the [statutory factors] even being considered"; (3) it did not state on the record its reasons for denial as required by AS 25.20.100 and AS 25.20.110; and (4) it failed to apply its earlier conclusion that "the failure of the parties to communicate and cooperate with each other *595 defeats their joint legal custody arrangement."
Two conditions must be satisfied before a motion to modify custody will be granted: first, the non-custodial parent must establish that a change in circumstances has occurred; and second, the modification must be in the best interests of the child.[12] "The required change in circumstance must be significant or substantial, and must be demonstrated relative to the facts and circumstances that existed at the time of the prior custody order that the party seeks to modify."[13] The superior court may deny custody modification without an evidentiary hearing if the "facts alleged, even if proved, cannot warrant modification, or if the allegations are so general or conclusory, and so convincingly refuted by competent evidence, as to create no genuine issue of material fact requiring a hearing."[14] The moving parent bears the burden of making a prima facie showing of a substantial change of circumstance as a threshold matter.[15] Once the movant meets that threshold burden, he or she is entitled "to a hearing to consider whether, in light of such changed circumstances, it is in the child's best interest to alter the existing custodial arrangement."[16]

1. Jerry's motion to modify legal custody of Dora was a de facto motion for reconsideration.

The content and timing of Jerry's motion to modify custody of Dora is dispositive in this case. It is critical to understand the procedural context of the dispute before the superior court. Jerry originally moved for modification of the 1992 agreement, seeking divided custody and primary physical custody of Rodney. Veronica cross-moved for sole legal custody of Dora. Jerry opposed that motion, noting that Veronica bore the burden of showing changed circumstances and alleging that she would be unable to meet that burden. Although these pleadings concerning Dora referred mostly to legal custody, by the time the case came to trial, the court was clearly considering the issue of Dora's physical custody.[17] First, the child custody investigator had recommended only two weeks before that Dora's physical custody remain with Veronica. Second, substantial portions of the trial were devoted to the question of Dora's custody, including aspects of her physical custody.[18] Finally, on at least two occasions during the trial Jerry affirmed that he wanted the court to do nothing about Dora's custody at that time and that she should remain placed with her mother.
The superior court issued its order granting Jerry's motion for primary physical custody of Rodney, awarding him sole legal custody of Rodney, and denying Veronica's motion for sole legal custody of Dora on October 27, 1998. Seven days later, on November 3, Jerry moved for reconsideration of that part of the order that required that the parties be "equally responsible for the payment of all costs of reasonable health care expenses, including treatment for substance abuse...." The superior court denied that motion on November 8. On November *596 13, Jerry filed a motion[19] for custody of Dora. He made no sufficient claim of changed circumstances since the trial. The court denied the motion on January 7, 1999.
This sequence of events and the considerations noted by the superior court in its order of October 27, 1998 convince us that Jerry's motion to modify custody of Dora was in fact a motion for reconsideration of the court's October 27 decision, a decision made just two weeks prior to Jerry's motion. As such, not only was Jerry's motion untimely,[20] but it was also properly denied by the superior court. The court considered extensive evidence concerning Dora's custody at trial. And the court asked pointed questions as to the propriety of Dora's situation. After considering the evidence, the court concluded that it was not in Dora's best interests to modify custody. Jerry's motion provided no basis for reconsideration of that fully-litigated and considered conclusion. And he failed to make a prima facie showing of changed circumstances in the two weeks that had elapsed since trial.[21] We thus conclude that the superior court did not err when it denied Jerry's November motion to modify Dora's custody.

2. The superior court was not required to perform a best-interests analysis or consider an updated child custody report or the AS 25.20.090 factors.

Jerry argues that the superior court must consider specific factors under AS 25.20.090[22] in determining an award of custody and that this was not done in this case. He argues that Cushing v. Painter[23] establishes his right to a hearing in this case. There, the trial court granted a change of permanent custody on the basis of an abbreviated, "interim" hearing.[24] In those circumstances, we said that it is "essential to contested custody proceedings that the parties be afforded a hearing which grants them the opportunity to present the quantum of evidence needed to make an informed and principled determination."[25] But when a motion to modify custody is denied, the trial court is not required to grant a hearing in order to perform the best-interests analysis if it is plain that the facts alleged in the moving papers would not warrant a modification.[26]
*597 Jerry argues that he is entitled to a "full custody modification proceeding" on his motion to modify custody of Dora. He ignores that the court had just entertained litigation concerning Dora's custody and declined to change her custody arrangement.[27] Moreover, Jerry did not even request such a hearing in his motion.[28] And had a timely request for a hearing to consider a custody investigator's report been made, the court would have been justified in denying it, both because it had considered and decided the issue of Dora's custody only two weeks before,[29] and because the decision to appoint a custody investigator is itself a discretionary one.[30]
Jerry's motion for modification of legal custody was in fact a motion for reconsideration of the October 27 court order. He did not allege changed circumstances that would justify a change in legal custody. Thus, the court was not required to undertake a best-interests analysis. Because Jerry did not ask for a hearing and the court was not required to have an updated custody report before deciding the motion, it was not error to deny the motion without holding a hearing.

3. The superior court did not err when it denied the motion for modification of Dora's legal custody without making findings on the record under AS 25.20.100.

Alaska Statute 25.20.100 provides: "If a parent or the guardian ad litem requests shared custody of a child and the court denies the request, the reasons for the denial shall be stated on the record." Jerry argues that the superior court violated this provision when it denied his motion while making "no mention as to the reasons" for denial. However, the plain terms of the statute apply to requests for shared custody, not requests to modify a shared custody arrangement to sole custody. The superior court made adequate findings in its October 27, 1998 order and was not required to make further findings on what we conclude was Jerry's motion to reconsider the court's decision regarding Dora's legal custody.

4. The denial of the motion without setting forth conclusions on the record did not violate AS 25.20.110.

Jerry argues that the superior court's conclusory denial of his motion to modify Dora's legal custody violated AS *598 25.20.110(a), which provides that "[i]f a parent opposes the modification of the award of custody or visitation with the child and the modification is granted, the court shall enter on the record its reason for the modification." However, the plain terms of the statute apply to grants of modification, not to denials. When a motion to modify custody is denied, the trial court is not required to grant a hearing in order to perform the best-interest analysis if it is plain that the facts alleged in the moving papers would not warrant a modification.[31] Because we conclude that Jerry's motion was one for reconsideration of the October 27 order denying a change to Dora's legal custody, we hold that the superior court did not err in denying Jerry's motions without stating its reasons.

5. The trial court's "non-cooperation" finding underlying its decision to give sole legal custody of Rodney to Jerry did not compel a grant of Jerry's motion concerning Dora's custody.

Jerry argues that the superior court abused its discretion by failing to conclude that its previous determination, that the "failure of the parties[ ] to communicate and cooperate with each other defeats their joint legal custody arrangement [of Rodney]," compels the further conclusion that Jerry ought to have been afforded the opportunity to have a hearing regarding legal custody of Dora. Jerry suggests that the court's prior conclusion of non-cooperation regarding Rodney justifies a change in custody of Dora. But the superior court made quite clear that its concern was the parties' inability to cooperate "in addressing the welfare and best interests of the minor child [Rodney]." There was no similar changed circumstances determination with respect to Dora; indeed, the superior court explicitly stated that Dora's legal custody should not be changed. We therefore conclude that the superior court's "non-cooperation" finding regarding Rodney did not compel further action regarding Dora and that the court did not err in denying Jerry's motion.

B. The Parties' Responsibility for Uncovered Medical Expenses in Excess of $5,000 for Their Children Is Ambiguous.

Jerry appeals the denial of his motion for reconsideration of the court's order requiring that he be responsible for fifty percent of the children's medical expenses, including the costs of Dora's treatment for substance abuse and depression. Jerry argued that since Dora was not in his custody when she developed the need for treatment, and since he was not informed of her substance abuse problems and did not consent to her treatment, he should not have to pay. When denying the motion, the superior court characterized it (and Jerry's motion for attorney's fees discussed below) as an attempt to impose upon Veronica full responsibility for Dora's medical expenses.
Under the modified custody arrangement, the superior court ordered Jerry and Veronica to share equally the children's health care costs:
Both parties have the duty to provide health care insurance for the two minor children and the health insurance costs are allocated equally between them....
Both parties are equally responsible for the payment of all costs of reasonable health care expenses, including treatment for substance abuse for the minor children.
Alaska Civil Rule 90.3(d)(1) requires the superior court to consider the children's health care coverage and to require insurance if it "is available to either parent at a reasonable cost.... The court shall allocate equally the cost of this insurance between the parties unless the court orders otherwise for good cause." As to uncovered health care expenses, the version of Civil Rule 90.3(d)(2) in effect at the time of the hearings in this case provided that uncovered health care expenses will be allocated equally between the parties unless otherwise ordered for good cause "except that a reasonable, uncovered expense in excess of $5,000 must be allocated based on the parties' relative financial circumstances when the expense occurs."
*599 The superior court did not abuse its discretion in denying Jerry's motion insofar as uninsured health care expenses do not exceed $5,000. However, there are two court orders that reference health care expenses that render the responsibility for uncovered medical costs over $5,000 ambiguous. One order is the standard court form for child support orders. It specifically sets out the rule regarding allocation of costs over $5,000 based on the parties relative financial circumstances. The other is the court's October 27, 1998 order in which the court ordered that "the parties are equally responsible for the payment of all costs of reasonable health care expenses, including treatment for substance abuse for the minor children." The latter order does not mention what happens if those expenses exceed $5,000. It is also unclear on this record whether the parties actually incurred health care expenses in excess of $5,000.[32]
Because the superior court's orders are ambiguous as to the responsibility for uncovered medical costs over $5,000, we remand for consideration of this issue.

C. The Trial Court Did Not Abuse Its Discretion in Denying Jerry's Motion for Award of Attorney's Fees for Litigation Concerning Custody of Dora.

Jerry argues that the superior court erred in denying his request for $4,000 in attorney's fees in the proceedings to modify custody of Rodney and Dora. In the superior court, he claimed that he was entitled to attorney's fees under AS 25.20.115[33] and Rowen v. Rowen[34] because Veronica had acted in bad faith.
However, our law is clear that "[l]ay pro se litigants cannot recover attorney's fees."[35] With the exception of a brief period of time, Jerry has proceeded pro se in all the matters presently being appealed. Thus, he cannot recover attorney's fees in this case. While Jerry did retain an attorney for some of the proceedings on appeal, he filed more motions in these matters as a pro se litigant  even during the time he obtained the services of counsel  than did his attorney.[36] Furthermore, one of those pro se motions specifically withdrew all pending motions regarding Rodney's custody. On these facts it was not an abuse of discretion for the superior court to deny Jerry's amended motion for attorney's fees. We therefore affirm the superior court's denial of his motion for attorney's fees.

D. The Trial Court Did Not Err in Modifying Child Support.

On cross-appeal, Veronica argues that the superior court erred in retroactively changing the date of child support. She argues that the interim child support order, dated October 2, 1997, governed the parties' obligations until November 1, 1998, when custody became final.

1. The modification was not retroactive.

While the motions for modification of child custody were pending, the superior *600 court issued an interim child support order. The interim order stated that "[c]hild support in this case shall be modified effective March 2, 1997, the date [Rodney] moved to defendant's home." The court concluded that Jerry's child support obligation was $165 per month. The court used the parties' 1996 income to calculate this support obligation.
In its October 27, 1998 custody modification order, the superior court recalculated child support obligations and found that Veronica should pay child support to Jerry in the total amount of $1,083 per year in twelve equal monthly payments of $90.25 without specifying an effective date. This calculation was based on the court's findings that "[i]n 1997, [Jerry's] gross income was substantially reduced from $33,006.68 to $18,775. [Veronica]'s income increased from $21,704.68 to $27,710." This order was vacated on November 5, 1998 when the court determined that it was "inconsistent with the court's order regarding physical and legal custody of the children which was issued on the same date." The court issued an amended order providing that "the effective date of the Amended Child Custody and Support Order entered on November 5, 1998, under which [Veronica] is obligated to pay the sum of $90.25 as child support under the split custody arrangement shall be June 1, 1997." Veronica moved for reconsideration of the effective date of her child support obligation, which the court denied.
Child support may not be modified retroactively.[37] The superior court explained that "[a] modification which is effective on or after the date a motion for modification is served on the opposing party is not considered a retroactive modification of the child support award." The court concluded that the June 1 effective date was "supported by the law and facts of this case" because "Defendant's motion to modify the child support order of the parties' minor son was filed on May 14, 1997. The minor child was in the physical custody of his father prior to May 14, 1997 and child support was provided by the father without contribution by the plaintiff."
The superior court did not abuse its discretion in setting the June 1, 1997 effective date. Rule 90.3(h)(2) specifically clarifies that a modification of child support that is effective on or after the date that notice of petition or motion for modification was served on the opposing party is not a retroactive modification. Since the parties do not dispute that Veronica was served before June 1, 1997 the superior court's order did not constitute a retroactive modification.[38] We therefore affirm the superior court's determination that June 1, 1997 was the effective date for Veronica's child support obligation.

2. The superior court did not err in calculating support based on 1997 income.

In the alternative, Veronica argues that even if the superior court did not err in setting the effective date, it did err in setting the dollar amounts to be paid by the parties because the superior court used the parties' 1997 incomes to determine support obligations in the modified order.
The superior court did not abuse its discretion in making its support calculations. The Commentary to Rule 90.3 provides that "[c]hild support is calculated as a certain percentage of the income which will be earned when the support is to be paid."[39] And in cases involving modification of child support, we have stated that "child support is both based on and paid out of the obligor's current income."[40] Here, the support in *601 question was to be paid in 1997. Therefore, the superior court correctly based its support calculations upon 1997 income. We therefore affirm the superior court's modified child support order.

V. CONCLUSION

Because Jerry's motion to modify legal custody of Dora was in fact a motion for reconsideration of the court's October 27, 1998 order resolving Dora's legal custody, and because Jerry showed no changed circumstances with regard to Dora's legal custody,[41] we AFFIRM the superior court's denial of Jerry's motion.
Jerry has an obligation to pay for half of his children's uncovered medical expenses up to $5,000. We therefore AFFIRM the superior court's denial of his motion for reconsideration of the order that he share equal responsibility for those expenses. However, we REMAND the question of responsibility for uncovered health care costs in excess of $5,000 for consideration of allocation of those costs (if they exist) according to the parties' relative financial condition at the time the costs were incurred.
We AFFIRM the superior court's denial of Jerry's motion for attorney's fees.
Because the effective date of Veronica's child support obligation did not create a retroactive modification, and the amount of support was correctly calculated, we AFFIRM the superior court's order modifying child support.
BRYNER, Justice, with whom MATTHEWS, Justice, joins, concurring.
While I agree with the court's opinion that the superior court did not abuse its discretion in denying Jerry's post-trial motion for modification of legal custody, I disagree with its position that Jerry's request for physical custody was essentially a motion for reconsideration of issues that had already been addressed and decided at trial. In my view, Justice Eastaugh's dissent correctly observes that Jerry never litigated the issue of physical custody during the trial. As Justice Eastaugh's review of the proceedings points out, the trial record establishes that Jerry fully understood the difference between physical and legal custody and carefully avoided litigating the issue of physical custody at trial.[1] I nevertheless disagree with Justice Eastaugh's conclusion that the superior court erred in failing to explain its reasons for denying Jerry's post-trial efforts to obtain physical custody. I would hold that summary denial was proper because Jerry did not properly move to modify physical custody.
When Jerry filed his post-trial motion to modify custody, he specifically avoided raising the issue of physical custody, expressly designating his motion as a "Motion to Modify Legal Custody" (emphasis added). Veronica understandably read Jerry's motion as asking only for legal custody; she relied on this understanding in opposing the motion, neglecting to argue the issue of physical custody.
Meanwhile, Jerry had separately moved for temporary physical custody. Veronica separately opposed that motion, properly focusing her opposition on the issue of physical custody. Jerry reacted to Veronica's opposition by withdrawing his temporary motion for physical custody; in so doing, he asserted  inaccurately  that he had raised the same issue in his original motion for modification  which actually raised only the issue of legal custody. That same day, Jerry replied to Veronica's opposition to his motion to *602 the issue of modifying legal custody, Jerry's reply purported to incorporate by reference his just-withdrawn motion for temporary physical custody and argued at length for both physical and legal custody. This argument was doubly improper: it argued for relief beyond the scope of the original motion; and it raised this new point for the first time in a reply memorandum.
The record strongly suggests that Jerry contrived these procedural maneuvers to impair Veronica's ability to defend against Jerry's claim for physical custody. After filing his motions for legal custody and temporary physical custody, Jerry waited until Veronica submitted her oppositions. He then withdrew his motion for interim physical custody, while simultaneously asserting a claim for physical custody in his reply to the opposition that Veronica had filed in response to his motion for legal custody. This tactic effectively orphaned Veronica's opposition to Jerry's motion for temporary physical custody: that opposition  the primary pleading in which Veronica addressed Jerry's request for physical custody  now responded to an abandoned motion. At the same time, Jerry transferred the issue of physical custody to a pleading that allowed Veronica no right of response: his reply to Veronica's opposition to his motion for legal custody. Any lingering doubt as to whether Jerry's actions were strategic maneuvers vanished when, in response to Veronica's supplemental response on the issue of physical custody, Jerry moved to strike her new pleading, insisting that Veronica had no right to respond to his reply.
Given these circumstances, I do not believe that the superior court abused its discretion by summarily denying Jerry's motion for modification. In pursuing his sudden change of procedural course, Jerry abandoned the only pleading that properly raised the issue of physical custody  his motion for temporary physical custody. And while his remaining motion to modify legal custody belatedly sought to argue for physical custody, it did so improperly.
On these facts, even though I agree with Justice Eastaugh that the proceedings at trial did not foreclose Jerry from attempting to litigate physical custody, I would hold that Jerry's failure to squarely raise the issue of physical custody permitted the superior court to summarily deny his motion to modify legal custody. I would find no abuse of discretion and would affirm the superior court's decision.[2]
EASTAUGH, Justice, concurring in part and dissenting in part.

A. Introduction

I agree with the court's resolution of all issues other than the issue of Dora's physical custody. These other issues are thoroughly and capably discussed in Justice Carpeneti's opinion. Except for the issues discussed in the separate opinions of Justice Bryner and myself, the court unanimously agrees with Justice Carpeneti's opinion. I also agree with the conclusion expressed by Justice Bryner and shared by Justice Matthews  a conclusion thus shared by a majority of the court  that the issue of Dora's physical custody was neither tried nor decided.[1] But I respectfully disagree with the result  affirmance  four members of the court reach regarding the issue of Dora's physical custody; I also disagree with their view that Jerry did not properly raise that issue after trial. Because Jerry adequately raised the issue after trial, I think it was necessary to make best-interests findings concerning Dora's physical custody.
Instead of affirming, we should remand for best-interests findings on the issue of Dora's physical custody. We should also permit the superior court, in its discretion, to hear additional evidence and order an updated child custody investigator's report bearing on Dora's physical custody.

*603 B. Pertinent Facts and Proceedings

The history of the physical custody dispute is important. The history reveals that neither explicitly nor implicitly did the parties try or the trial court decide the issue whether to modify Dora's physical custody. It also reveals that Jerry adequately raised the issue after trial.
The litigation history of this case is extensive. This is an attempt to summarize only the relevant events.

1. The issues tried and decided

Veronica and Jerry divorced in 1992. Their 1992 divorce decree incorporated their agreement that they would have joint legal custody of their two minor children, Dora and Rodney. As they agreed, the 1992 decree awarded Veronica primary physical custody of both children and awarded Jerry visitation.
In 1997 Jerry filed a motion seeking primary physical custody of Rodney. In August 1998 Veronica filed a motion to seek sole legal custody of Dora. A hearing on both motions was set for October 1998.
The superior court had ordered a child custody investigation in 1997, and the report was completed October 14, 1998. The report stated, among other things, that "[n]either parent contests [Dora]'s primary placement with her mother, so her situation is not discussed in great depth." The report stated that "[Dora] was seen just one time," was living with her mother, and desired "to stay in that placement." It reported that Veronica's new husband, J.A., had "spanked [Dora] on one occasion and shoved her against the wall on another," and that Dora had gone "to a friend's home until emotions settled down." The report also noted that Dora had failed at one school and had entered an in-patient program for substance abuse that would end October 16, when she was to enter a three- to six-month residential treatment program. The report stated that "[Dora]'s placement is not contested. She wants to remain in her mother's home and both parents want her to remain there." The report recommended that Jerry "be awarded sole legal and primary physical custody of [Rodney]," and that Veronica "be awarded sole legal and primary physical custody of [Dora]."
The superior court heard testimony October 26, 1998. The court characterized the hearing as one on Veronica's and Jerry's motions to modify custody of Dora and Rodney. The parties characterized the issues similarly. Veronica's attorney, at the start of the hearing, questioned the child custody investigator about her recommendation regarding legal custody of the children. During her closing statements, Veronica's attorney explained that Veronica was seeking sole legal custody of Dora. Following the testimony of the child custody investigator, the superior court told Jerry that he could present any "additional evidence" that he wished the court to consider, and asked Jerry to explain his objections to the child custody investigator's recommendations regarding Dora. Jerry explained that he was asking the court "to defer their decision on [Dora]'s situation." The court then asked Jerry, "what it is you're asking the court to do regarding [Dora]?" Jerry responded, "nothing at this time," but asked that the court leave Dora in the parents' joint legal custody until more could be learned about her substance abuse problem.
Veronica testified at the hearing that a physical altercation had taken place between her new husband, J.A., and Dora, resulting in police intervention and a Division of Family and Youth Services (DFYS) investigation. During his closing statement, Jerry reiterated his desire for the "best possible environment" for his children, stating that the "environment that Veronica and J.A. have presented has been less than desirable." He again asked the court to "defer any decision on [Dora]'s custody right now until we have a full picture of what's going on with [Dora]." The court interrupted Veronica's attorney's closing statement and asked, "on the basis of the information that I have right now [regarding the physical altercation between J.A. and Dora and the on-going DFYS investigation], how can I conclude that [Dora] has been provided with a stable, satisfactory home environment in her mother's custody?" Veronica's attorney then suggested that if the court *604 had concerns about Dora's safety in the J.A. household, the court should "have the custody investigator look further into that." Veronica's attorney again explained that she was "asking that [Veronica] have sole legal custody of [Dora]." (Emphasis added.) Just before the hearing ended, the court stated that "the information I've been provided today regarding [Dora] is substantial new information [regarding the physical altercation and the DFYS investigation] and should have been investigated ... more fully by the custody investigator."
The superior court entered an order on October 27, 1998 disposing of the trial issues. The order noted that there were two motions before the court: Jerry's 1997 motion to modify Rodney's custody[2] and Veronica's 1998 motion seeking sole legal custody of Dora. The order then awarded primary physical and sole legal custody of Rodney to Jerry. In doing so, it first held that Jerry had demonstrated a "substantial change of circumstances" since entry of the 1992 custody decree, and then held that Rodney's "welfare and best interests" were served by awarding his primary physical custody to Jerry.
The order then dealt with Veronica's motion seeking sole legal custody of Dora. It noted that Dora was fourteen, had a serious substance abuse problem, and was then in a voluntary residential treatment program that might last three to eight months. It noted Dora's confrontation with her stepfather, his use of inappropriate force against her, and the ensuing intervention by the Anchorage Police Department (APD). It noted that a report of harm had been filed with DFYS. The order then found that "the modification of [Dora's] legal custody would not serve her welfare and best interest." (Emphasis added.) The court consequently denied Veronica's motion to modify Dora's custody.
The October 26, 1998 trial produced evidence that would have been relevant to both Dora's legal custody and her physical placement, but the only dispute the October 27 order discussed concerning Dora's custody pertained to Veronica's motion to modify Dora's legal custody. The order did not address the topic of Dora's physical custody or note that there was any dispute before the court about Dora's physical custody. Given the care taken by the superior court to craft its order, it is clear that with respect to Dora, the court was ruling only on Veronica's motion to modify Dora's sole legal custody, and was not addressing Dora's physical custody.[3] Given that no motion put Dora's physical custody in issue as well as Jerry's statements that he was not seeking physical custody of Dora, there was no reason for the order to deal with that topic. The parties did not litigate the issue and the court did not decide it.
So far as I can see, the record does not permit a conclusion that the superior court actually considered or decided whether to modify Dora's physical custody when it conducted the October 26, 1998 trial. I therefore think it is incorrect to imply that the trial court decided this non-issue,[4] to imply that it *605 was "fully-litigated,"[5] or to say that the trial court "was clearly considering the issue of Dora's physical custody."[6]
In support of the latter proposition, the opinion refers to the child custody investigator's October 14 recommendation that Dora's physical custody remain with Veronica.[7] But there is no indication in the record that the superior court acted on that recommendation, and indeed, the report itself noted that Dora's physical custody was not in issue. The opinion next notes that "substantial portions of the trial were devoted to the question of Dora's custody, including aspects of her physical custody."[8] Certainly there was trial evidence concerning her mother's ability to care for her and the situation in the J.A. household. That evidence was relevant to Dora's legal custody. It also would have been relevant to her physical custody, had that issue been tried. But that does not mean that the parties actually tried or the superior court considered any issue of Dora's physical custody. Finally, the opinion observes that "on at least two occasions during trial Jerry affirmed that he wanted the court to do nothing about Dora's custody at that time and that she should remain placed with her mother."[9] This observation is correct, but it does not support a conclusion that the superior court decided Dora's physical custody. It instead confirms that Dora's physical custody was not on trial. Thus, it is hard to see how the superior court could have considered it or why Jerry was foreclosed from raising it after trial.

2. Post-trial events

The history of Jerry's post-trial motions is also important. This history first demonstrates that Jerry established that circumstances regarding Dora's physical custody had materially changed during the relevant interval. That was the interval between entry of the last order determining Dora's physical custody, the 1992 decree, and the filing of Jerry's post-trial efforts raising the physical custody issue.
This history also demonstrates that Jerry adequately brought the issue to the superior court's attention, despite Jerry's procedural backing and filling and aggressive approach to litigation. Jerry was pro se. Although he appears to have been an articulate and relatively capable pro se, it was necessary to read his pleadings for their substance, not for their strict terminology.
Here is what they reveal. On November 13 Jerry filed his November 10, 1998 "Motion to Modify Legal Custody." Although its title only referred to Dora's "legal custody," Jerry's motion noted that Jerry had previously asked the court to delay modifying custody pending a motion for mediation to guide the parties in what would best serve Dora during her treatment for substance abuse and depression. Noting that the court had denied Jerry's previous mediation motion, Jerry's November 10 motion asked the court to apply to Dora the same standard it had applied on October 27 in awarding Rodney's sole legal custody to Jerry; in support, Jerry discussed the evidence produced at the October 26 trial regarding Dora, her stepfather's inappropriate use of physical force, her involvement with the APD and DFYS, numerous reports of harm, her medical records, her school records, runaway reports, a shoplifting charge, and a teen-smoking violation. He asserted that "[t]he body of evidence above alone indicates that plaintiff has not provided for [Dora]'s physical, emotional, mental and social needs and lacks the capacity to do so." Jerry consequently asked to be awarded sole legal custody of Dora.
Although his November 10 motion can be fairly read to have sought only legal custody of Dora, Jerry soon filed his November 23, 1998 "Motion for Temporary Change in Physical Custody of ... [Dora]." This new motion squarely alleged circumstances that would have, if true, potentially justified modifying *606 Dora's physical custody. It alleged that Dora was "in harm's way from a number of fronts" and that "it would be in [Dora]'s best interest to be placed with her father." It alleged that Dora should not return to the undesirable environment where Veronica's new husband might assault her. It sought an immediate change in the child's physical custody. It is significant that it also referred as follows to Jerry's still-pending November 10 "Legal Custody" motion: "[Jerry] petitioned this court for sole legal and physical custody of [Dora] November 10, 1998 and incorporates that motion with this one." (Emphasis added.) The proposed order Jerry submitted with his November 23 motion contained the following sentence: "[Jerry] petitioned this court November 10, 1998 for sole legal and physical custody of Dora and that motion shall receive due process. Final custody, support and visitation issues will be addressed in that process." (Emphasis added.)
Veronica opposed Jerry's motion for temporary change of custody on November 30 and attached a copy of a letter she had sent Jerry several days before, even before Jerry had mailed his November 23 motion for temporary change of custody. Her letter alleged that there are no support facilities where Jerry lives and alleged that rural Alaska would expose Dora to drugs, alcohol, or tobacco. Veronica's letter therefore squarely addressed the propriety of Dora's physical residence, even before Jerry had filed his motion seeking a temporary change in Dora's physical custody.
On December 4 Jerry filed his December 3 reply supporting his motion to modify Dora's legal custody. Some of its passages were most relevant to legal custody, such as those referring to the parties' inability to communicate and cooperate. But other passages were most relevant to physical custody. One referred to the DFYS investigation and its relevance to a change in custody. One noted that Dora had been safe in recent weeks because she had not resided in Veronica's home. One referred to assault charges against Veronica's new husband resulting from an altercation with Dora. One noted that Veronica had not responded to Jerry's claim that she is unable to provide for Dora's physical, emotional, mental, and social needs. One alleged that Veronica had given Dora too much freedom, putting her in jeopardy. One noted that Jerry had moved for a temporary change in Dora's physical custody on November 23, and that although he was withdrawing that motion, "the body is incorporated into this motion." (Emphasis added.) Jerry's reply also alleged that the parties had verbally agreed that Dora would be "placed" with the father. Finally, it contended that Veronica "should be granted visitation rights according to the visitation schedule." There would be no reason to grant visitation rights if there were no change in Dora's physical custody and if the only change were in her legal custody.
Jerry also filed several other documents on December 4. One was a motion for expedited consideration of his motion to modify legal custody of Dora. The expedited consideration motion asserted that Dora left residential treatment on November 20 and had resumed residing with Veronica. It again commented negatively on the J.A. household environment and alleged that "it is in the child's best interests to be living with her father in a fresh environment as soon as possible." It asked the court "to expedite the process to diminish the risk to the minor child, [Dora]."
Jerry also submitted on December 3 a proposed order that would have granted his "motion to modify legal and physical custody" of Dora.
On December 4 Jerry also filed his December 3 "Withdrawal of Motion for Temporary Change of Physical Custody" of Dora. The withdrawal notice contained this statement: "[Jerry's] reply to [Veronica's] opposition will serve the intent of [Jerry], and makes this motion for temporary change of physical custody redundant." (Emphasis added.) Of course, a permanent change of physical custody would make a temporary change redundant. The withdrawal notice also made the following statement: "[Jerry] will respond to [Veronica's] opposition to [Jerry's] motion for sole legal and physical custody of [Dora]." (Emphasis added.)
Veronica's opposition to Jerry's motion for temporary change confirmed that she understood *607 that Jerry was seeking a change in both legal and physical custody of Dora. Her December 11 filing was titled "Opposition to Defendant[']s Motion for a Change in Legal and Physical Custody of the Parties['] Minor Daughter, [Dora]." The first paragraph of her opposition referred to Jerry's "request for a change of legal and physical custody of... [Dora]." Her opposition squarely addressed the unsuitability of Jerry's Copper River Basin residence for Dora. It stated that Jerry's "request for change in legal and physical custody should be denied."
Thus, even though the titles of some of Jerry's documents were potentially misleading, his filings in substance and context made it clear that he was seeking a change in Dora's physical custody. They also made it clear that he was relying on the circumstances identified at the October 26 trial and on the new circumstance that Dora had left, apparently prematurely, the residential treatment program and was again living in the J.A. household. I also read them to preserve the issue of permanent physical custody even though he had withdrawn his motion to modify Dora's temporary physical custody.

C. Discussion

Citing AS 25.20.110, Jerry asserts on appeal that the superior court abused its discretion in failing to set out findings of fact and conclusions of law stating why Jerry's motion to modify was not in Dora's best interests. Citing AS 25.20.100, he asserts that it was error to deny his motions for physical custody and to modify Dora's physical custody without stating the reasons for denial. Citing AS 25.20.090, he asserts that the court abused its discretion in denying his motion for physical custody.
I agree with his first two propositions. As to the third proposition, because there are no findings, I cannot say whether it was an abuse of discretion to deny the motion to modify.
In my view, Jerry's post-trial motions (1) did not simply seek reconsideration of something already decided; (2) made out a change of circumstances that justified revisiting the custody issue; and (3) alleged changes supported by admissible evidence.
First, as seen above in Part B.1, the record establishes that Dora's physical custody was not at issue at the October 26 trial and that the October 27 order did not address or decide that issue. And it is not necessary to decide whether a parent can "hold a custody dispute in reserve,"[10] because Dora's physical custody was not in dispute at trial.
Second, Jerry's November and December 1998 filings showed that circumstances regarding Dora's physical custody had changed since entry of the 1992 decree. Because the 1992 decree was the last order that awarded physical custody of Dora, it set the relevant factual baseline. The current circumstances, as evidenced at the October 26, 1998 trial, could not set an October 26, 1998 baseline because the October 27, 1998 order did not decide Dora's physical custody. It therefore does not matter that Jerry may not have established that circumstances had changed since October 26, 1998. What was critical was that they had materially changed since 1992.[11]
Third, Jerry made out a prima facie and procedurally sufficient showing of changed circumstances because he relied on evidence *608 introduced in open court in October 1998. The trial produced admissible evidence revealing that there had been many significant changes relevant to Dora's physical custody since the 1992 decree was entered. To the extent he relied on evidence introduced at the trial, Jerry was not required to offer evidence in affidavit form. Likewise, Jerry's reliance on trial evidence that clearly established a change of circumstances made it irrelevant that his partial reliance on unsworn post-trial events may have been procedurally deficient.
Because Jerry clearly demonstrated that circumstances had changed, a best-interests determination was necessary.[12] Even though the superior court had only recently heard all or substantially all of the relevant evidence, its orders contain no best-interests findings on a change of Dora's physical custody, and we cannot infer any such findings from the highly disputed trial evidence. We should therefore remand for the findings required by statute.
The concurring opinion reads the record to suggest that Jerry "contrived ... procedural maneuvers" and engaged in tactics or strategies to disadvantage Veronica.[13] This is one plausible characterization of Jerry's filings, but it is not the only one. The trial court was the proper forum to decide whether Jerry engaged in improper litigation tactics, and, if he did, whether that was cause for denying his motion to modify. The trial court did not give that as a ground for denying Jerry's motion. More important, the focus should be on the child, not the parent. Given the substantial evidence that justified reexamining Dora's physical placement, her father's litigation tactics were not so egregious as to allow us to hold as a matter of law that they preclude consideration of the child's best interests. Nor are they so egregious that we should suppose that they caused the superior court to deny the motion without addressing the child's best interests.
Jerry also argues on appeal that he was entitled to a hearing and an updated child custody investigator's report. Given the recency of the report and the trial, and given Jerry's failure to establish by affidavit that there was additional evidence to be heard beyond that presented at trial, the superior court did not abuse its discretion by not conducting a hearing or ordering a new report. But because I would remand for findings, I would permit the superior court to decide whether to receive additional evidence, assuming no party establishes that there is new evidence of such relevance that it mandates a hearing. I would likewise also permit the superior court to decide whether to order an updated report focusing on Dora's physical custody.[14]

D. Conclusion

For these reasons, I would vacate the January 7, 1999 order denying Jerry's motion to modify custody of Dora and remand for best-interests findings and for further proceedings addressed to the discretion of the superior court.
I fully concur in the court's opinion to the extent it deals with non-custody issues.
NOTES
[1] Pseudonyms have been used throughout this opinion for all family members.
[2] The substantial period of time between these motions is explained by the tortuous procedural history of this case: Jerry filed several other motions beginning in May 1997, but he withdrew all of them in July 1997. Then, at a status hearing in September 1997, he stated that he wished to pursue modification of Rodney's custody, and the trial court appointed a custody investigator. In June 1998 the court issued a calendaring order, setting on a hearing before a special master in July. The hearing was first continued until August and then vacated because the custody investigation was not complete. Shortly after Veronica filed her motion to modify custody of Dora, the court set trial on the competing motions for October.
[3] See Valentino v. Cote, 3 P.3d 337, 339 (Alaska 2000) (citing Julsen v. Julsen, 741 P.2d 642, 648-49 (Alaska 1987)).
[4] See Pearson v. Pearson, 5 P.3d 239, 242 (Alaska 2000) (per curiam) (citing Horutz v. Horutz, 560 P.2d 397, 399 (Alaska 1977)).
[5] See Pearson, 5 P.3d at 242 (citing Kessler v. Kessler, 827 P.2d 1119, 1119 (Alaska 1992)).
[6] See Money v. Money, 852 P.2d 1158, 1161 (Alaska 1993).
[7] B.J. v. J.D., 950 P.2d 113, 119 (Alaska 1997) (citing Kessler, 827 P.2d at 1120 n. 4).
[8] Zimin v. Zimin, 837 P.2d 118, 124 (Alaska 1992) (quoting Tobeluk v. Lind, 589 P.2d 873, 878 (Alaska 1979)).
[9] See State, Dep't of Revenue, Child Support Enforcement Div. v. Schofield, 993 P.2d 405, 407 (Alaska 1999).
[10] See id.
[11] See id.
[12] See AS 25.20.110(a) ("An award of custody of a child or visitation with the child may be modified if the court determines that a change in circumstances requires the modification of the award and the modification is in the best interests of the child."); see also Nichols v. Mandelin, 790 P.2d 1367, 1372 (Alaska 1990).
[13] Jenkins v. Handel, 10 P.3d 586, 589 (Alaska 2000) (internal citations omitted).
[14] Harrington v. Jordan, 984 P.2d 1, 3 (Alaska 1999) (quoting Morino v. Swayman, 970 P.2d 426, 428 (Alaska 1999); see also C.R.B. v. C.C., 959 P.2d 375, 378 (Alaska 1998)).
[15] See Harrington, 984 P.2d at 3; Long v. Long, 816 P.2d 145, 149 (Alaska 1991) (citing Lee v. Cox, 790 P.2d 1359, 1361 (1990)).
[16] Lee, 790 P.2d at 1361.
[17] Jerry's motion for divided custody, on its face, raised the question of the custody arrangement as to both children.
[18] A review of the log notes of the trial suggests that more time was devoted by the parties to the question of Dora's custody than to the question of Rodney's custody. For example, it appears that Jerry spent at least half of his testimony discussing Dora's situation. The same is true of Veronica's testimony. During closing arguments, the court's focus was on Dora, not Rodney.
[19] The motion was entitled "Motion to Modify Legal Custody," but it appears clear in context of the supporting materials that Jerry intended to move to modify Dora's physical custody as well. And, on November 23, 1998 Jerry filed a motion for a "temporary change in physical custody of [Dora]." He declared that this motion incorporated his previous motion, which he then characterized as a motion for "sole legal and physical custody of [Dora]." On November 30 Veronica opposed the motion. But on December 3 Jerry withdrew his motion for temporary physical custody of Dora, concluding that his reply to Veronica's opposition to his motion "serve[d][his] intent" and rendered the motion for temporary change of physical custody "redundant."
[20] Alaska R. Civ. P. 77(k) provides in part that "[a] motion to reconsider a ruling must be made within ten days after the date of notice of the ruling."
[21] The concurrence assumes that Jerry's assertion at the hearing  that he wanted Dora's physical custody left as is  kept open the possibility that he could litigate this issue immediately after trial through a motion to modify custody. This assumption is incorrect. A litigant in a child custody proceeding may not hold a custody issue in reserve until after he (or she) learns the ruling of the court, and then, as here, seek to litigate the issue that he previously declined to address at trial without showing changed circumstances. See, e.g., Gratrix v. Gratrix, 652 P.2d 76, 82-3 (Alaska 1982) ("The `changed circumstances' rule ... is intended to discourage continual relitigation of custody decisions.... [T]he general application of the requirement of a change in circumstances reflects the judicial assumption that finality and certainty in custody matters are critical to the child's emotional welfare.").
[22] These factors include the needs of the child, the child's preferences, the stability of the home environment likely to be offered by each parent, and several others.
[23] 666 P.2d 1044 (Alaska 1983).
[24] Id. at 1045.
[25] Id. at 1046.
[26] See Naquin v. Naquin, 974 P.2d 383, 385 (Alaska 1999); see also Deivert v. Oseira, 628 P.2d 575, 577-78 (Alaska 1981). In explaining the balancing of values inherent in the court's discretion to resolve motions for modification of custody, the Deivert court explained:

While judges may not abdicate their judicial responsibilities, they also must be given some power to resolve child custody litigation. No purpose would be served in requiring a "substantial change of circumstance" before custody modification if a full hearing must be held on motions that do not contain a prima facie showing of either a change that warrants reexamination of the question, or that the best interests of the children would be served by a change of custody.
Id. at 578.
[27] The court had before it the original custody investigation report when it decided the question of Dora's legal custody. That report noted that "[n]either parent contests [Dora]'s primary placement with her mother." While the report reveals that Dora's interests were not given primary attention because custody of Dora was not disputed at that time, the custody investigator made the following prescient remark: "[Dora] wants to remain in her mother's home and both parents want her to remain there. If either parent's position changes before the trial, one is forced to wonder at the cause." These comments were filed with the court very shortly before the court's custody order, and about a month before Jerry's motion for sole legal custody of Dora.
[28] It is true that, in his motion for reconsideration, Jerry did request that the court consider the updated recommendation of a child custody investigator that the court had previously requested. But the court was under no obligation to consider an issue raised for the first time in a motion for reconsideration. See DeNardo v. GCI Communication Corp., 983 P.2d 1288, 1290 (Alaska 1999) ("Issues raised for the first time in a motion for reconsideration are untimely. Because these issues are not properly before us on appeal, we decline to consider them.") (citing Stadnicky v. Southpark Terrace Homeowner's Ass'n, Inc., 939 P.2d 403, 405 (Alaska 1997)).
[29] See Carter v. Brodrick, 816 P.2d 202, 204-05 (Alaska 1991) (explaining that hearing is not required in custody cases where there is no showing of changed circumstances); see also C.R.B. v. C.C., 959 P.2d 375, 378-79 (Alaska 1998) (explaining that court is not required to hold hearing on motion to modify custody upon all requests to do so).
[30] See Pearson v. Pearson, 5 P.3d 239, 242 (Alaska 2000) (holding that trial judge has discretion whether or not to appoint custody investigator) (citing Lacy v. Lacy, 553 P.2d 928, 930 (Alaska 1976)).
[31] See cases cited supra note 29.
[32] Veronica points out that health insurance covered ninety-five percent of Dora's drug treatment program. She claims that Dora's treatment costs totaled $25,180 and that Jerry's obligation for the uncovered portion was $1,195. Jerry never contested this amount. However, at trial, some rather large dollar amounts were mentioned: a one-time fee of $10,000; expenses for Dora and the Volunteers of America Fee schedule at $42,000; and a bill for Dora at Providence for $13,351. But there is no indication as to who may have paid these costs, or even if they were actually incurred.
[33] Alaska Statute 25.20.115 provides:

In an action to modify, vacate, or enforce that part of an order providing for custody of a child or visitation with a child, the court may, upon request of a party, award attorney fees and costs of the action. In awarding attorney fees and costs under this section, the court shall consider the relative financial resources of the parties and whether the parties have acted in good faith.
[34] 963 P.2d 249, 257 n. 7 (Alaska 1998).
[35] Gates v. City of Tenakee Springs, 822 P.2d 455, 463 (Alaska 1991) (citing Alaska Fed. Sav. & Loan v. Bernhardt, 794 P.2d 579, 581-82 (Alaska 1990)).
[36] Jerry filed numerous motions in 1997. After Jerry withdrew these motions, his attorney filed only a few court papers between August and October 1997 and then withdrew by June 1998. During this time, Jerry continued to file numerous briefs pro se.
[37] See Alaska R. Civ. P. 90.3(h)(2); see State, Dep't of Revenue, Child Support Enforcement Div. v. Schofield, 993 P.2d 405, 407 (Alaska 1999) (holding that Alaska law prohibits, with few exceptions, retroactive modification of child support obligations).
[38] See Rowen, 963 P.2d at 256 (holding that setting effective date of modified child support order on date after which it was undisputed that opposing party had been served in modification proceeding was not an abuse of discretion).
[39] Alaska R. Civ. P. 90.3 Commentary III.E.
[40] Boone v. Boone, 960 P.2d 579, 585 (Alaska 1998) (citing Flannery v. Flannery, 950 P.2d 126, 133 (Alaska 1997) (holding that the superior court erred when it did not consider the obligor's income from the time of a motion to modify onward as the relevant period of changed circumstances)).
[41] Chief Justice Fabe joins the author of this opinion in agreeing with this rationale. Two other members join in the conclusion to affirm the denial of Jerry's motion for the reason that Jerry did not properly move to modify physical custody.
[1] I do not suggest that Jerry had a right to hold the issue of physical custody in reserve until the issue of legal custody was decided. My point is that, regardless of whether he had the right to reserve the issue, the court allowed him to reserve it and did not purport to rule on the issue at trial. Indeed, the superior court's willingness to entertain the question of physical custody when Jerry first filed his post-trial motions establishes that the court itself considered physical custody to be an open issue until Jerry withdrew his interim motion for physical custody.
[2] This disposition would, of course, leave Jerry free to revisit the issue of physical custody  by a proper motion  if he still perceived a problem.
[1] See Op. at 601 (Bryner, J., concurring). I therefore disagree with the suggestion of two members of the court that the issue of Dora's physical custody was considered at the October 1998 hearing and that the evidence produced there set the baseline for determining whether there was a change of circumstances. See Op. at 595.
[2] The order initially erroneously referred to Jerry's motion as one to modify Dora's custody. But the order correctly treated that motion as only pertaining to Rodney's custody, and resolved Jerry's motion in that context.
[3] It is potentially significant that the superior court chose to enlarge on the relief Jerry sought with respect to Rodney. The court modified custody by giving Jerry primary physical custody of Rodney, as Jerry had requested. It then also gave Jerry sole legal custody of Rodney because the parties' failure to communicate and cooperate with each other had defeated their joint legal custody arrangement. The court nonetheless dealt narrowly with Dora's custody, discussing and resolving only Veronica's request for sole legal custody without mentioning any issue about Dora's physical custody.
[4] Thus, I do not agree with the implication resulting from the statement that the trial court "left ... her primary physical custody with Veronica." Op. at 592. Likewise, I do not agree with the implication resulting from the statement that the trial court "declined to change her custody arrangement." Op. at 597. The trial court was much more specific in describing the custody issue presented concerning Dora and in denying Veronica's motion to modify Dora's legal custody. The October 27 order did not purport to resolve any issue concerning Dora's physical custody. I therefore also disagree with the implication that results when the opinion characterizes as "fully-litigated and considered" the trial court's conclusion "that it was not in Dora's best interests to modify custody." Op. at 596. The opinion cites Excerpt 39 in support. But the superior court there only found that "the modification of her legal custody would not serve her welfare and best interests." (Emphasis added.)
[5] Op. at 596.
[6] Op. at 595.
[7] See Op. at 595.
[8] Op. at 595.
[9] Op. at 595.
[10] See Op. at 596 n. 21. In any event, I agree with Justice Bryner's observation that the trial court "allowed [Jerry] to reserve it and did not purport to rule on the issue at trial." Op. at 596 n. 1. (Bryner, J., concurring).
[11] The two members of the court who conclude that Dora's physical custody was actually in issue on October 26 reason that Jerry's post-trial motion papers either sought reconsideration of a matter that was "fully-litigated," or "failed to make a prima facie showing" that circumstances had changed in the two weeks between October 26, when the trial ended, and November 10, when Jerry filed his motion to modify. Op. at 596. These comments imply that the facts adduced on October 26 set the factual baseline for Dora's physical custody and that only circumstances changing after that date were relevant to deciding whether Jerry met the changed-circumstances threshold for considering whether to modify Dora's physical custody. But as seen above in Part B.1, the issue was neither "fully-litigated" at the October 26 trial nor decided by the October 27 order. The relevant baseline was therefore set by the 1992 decree.
[12] See AS 25.20.110(a) ("An award of custody of a child or visitation with the child may be modified if the court determines that a change in circumstances requires the modification of the award and the modification is in the best interests of the child."); see also Schuyler v. Briner, 13 P.3d 738, 741-42 (Alaska 2000); C.R.B. v. C.C., 959 P.2d 375, 381 (Alaska 1998).
[13] See Op. at 602 (Bryner, J., concurring).
[14] The October 16 report noted that "[Dora] was seen just one time," and also stated that "[Dora]'s [physical custody] is not contested."