NOTICE

*Memorandum decisions of this court do not create legal precedent.  A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| RAYMOND V., | ) | |
| | ) | Supreme Court No. S-17600 |
| Appellant, | ) | |
| | ) | Superior Court No. 2BA-12-00082 CI |
| v. | ) | |
| | ) | <u>MEMORANDUM OPINION</u> |
| DANTÉ E., | ) | <u>AND JUDGMENT</u>* |
| | ) | |
| Appellee. | ) | No. 1784 – August 5, 2020 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Second Judicial District, Utqiaġvik, Nelson Traverso, Judge.

Appearances:  Robert Campbell, Caliber Law Group, Barrow, for Appellant.  John J. Sherman, Mendel Colbert & Associates, Inc., Anchorage, for Appellee.

Before:  Bolger, Chief Justice, Winfree, Maassen, and Carney, Justices.

## I.    FACTS AND PROCEEDINGS

Raymond V. and Danté E. have a daughter who was born in late 2011.[1]  Danté filed a complaint for custody in August 2012.  She sought sole legal and primary physical custody of their child.

---

\*        Entered under Alaska Appellate Rule 214.

[1]        We use initials in lieu of the parties' last names to protect the family's privacy.

Raymond and Danté, assisted by counsel, reached a settlement in early November. They agreed that Danté would have sole legal and primary physical custody and that Raymond would have visitation "conditioned upon his successful completion of the Domestic Violence Intervention Program, offered in Barrow."[2]

In late April 2013 Raymond filed a motion to "dismiss" the settlement agreement and award him shared legal and physical custody. The motion implied that he had reservations when he signed the agreement and noted that he had "started seeing a counselor."

The superior court denied his motion in a lengthy and thorough order. It concluded that the settlement agreement was a valid contract Raymond had voluntarily entered. The court alternatively interpreted the motion as one to modify custody and concluded that Raymond had failed to demonstrate any changed circumstances that would justify modification. Although it commended Raymond for engaging in counseling, the court noted that he had provided "no information" that he "completed a certified Domestic Violence Intervention Program."[3]

In May 2015 Raymond filed a motion to modify custody, arguing that there had been three substantial changes of circumstances justifying modification: a report that Danté had attempted suicide in March 2014; his completion of the counseling he had begun in 2013; and the "over three years" that he had only visitation with their daughter.

The superior court denied the motion. The court first found that Raymond had failed to provide any evidence beyond a police dispatch log to support his claim that

---

[2]    The city of Utqiaġvik was formerly called Barrow.

[3]    The court warned that if Raymond proceeded to a hearing, he risked a finding that he had a history of domestic violence, which would lead to a statutory presumption prohibiting him from unsupervised visitation or custody. *See* AS 25.24.150(g)-(h), (j).

Danté had attempted suicide. It also stated that Raymond had not explained either how the alleged suicide attempt affected Danté's ability to care for their daughter or how modifying custody would ameliorate any concerns.

The court rejected Raymond's argument that completing counseling constituted a change in circumstances and again noted that he had provided no proof he had completed a domestic violence intervention program. It also pointed out in a footnote that the settlement agreement required him to attend such a program as a condition of continued visitation. Raymond's subsequent motion for reconsideration was apparently denied by operation of Alaska Civil Rule 77(k)(4).

Raymond filed a second motion to modify custody in August 2019, again arguing that completed counseling and issues relating to Danté's mental health justified modification. He also argued that limited contact with his daughter had deprived her of exposure to Filipino language and culture, stressed that his contact with his daughter had been limited "[f]or over SEVEN years," and asserted that "it is *time* that is the most important factor" demonstrating a change in circumstances. (Emphases in original.) He attached affidavits from family and friends, attesting to their belief that he should be entitled to more time with his daughter.

A month later the court issued a terse order finding that there had been no substantial change in circumstances and denying Raymond's motion. Raymond appeals, arguing that the court erred by failing to make required findings and by failing to hold a hearing on his motion.

## II.   DISCUSSION

"Whether there are sufficient findings for informed appellate review is a question of law."[4]  We review de novo whether a moving party made a prima facie showing of changed circumstances sufficient to require a hearing.[5]

Raymond argues that the superior court erred by failing to state more specifically its reasons for finding that he had not shown a substantial change in circumstances.  But AS 25.20.110(a) requires the court to state its reasons when it *grants* a motion to modify; it does not require a statement of reasons when the court *denies* modification.[6]

The court had previously rejected most of Raymond's alleged changes in circumstances.  And the additional argument Raymond stressed, that time "is the most important factor" justifying custody modification, overlooks decades of Alaska cases emphasizing the importance of "finality and certainty in custody matters" to protect children's "emotional welfare,"[7] and specifically requiring "more than mere passage of time" to modify custody.[8]

The superior court was not required to provide more specific reasons to deny Raymond's motion than "that there was no substantial change in circumstances." The court did not err.

---

[4]      *Horne v. Touhakis*, 356 P.3d 280, 282 (Alaska 2015) (quoting *Hooper v. Hooper*, 188 P.3d 681, 685 (Alaska 2008)).

[5]      *Collier v. Harris*, 261 P.3d 397, 402 (Alaska 2011).

[6]      *Hanson v. Hanson*, 36 P.3d 1181, 1188 (Alaska 2001).

[7]      *Peterson v. Swarthout*, 214 P.3d 332, 340-41(Alaska 2009).

[8]      *Hope P. v. Flynn G.*, 355 P.3d 559, 565 (Alaska 2015) (quoting *C.R.B. v. C.C.*, 959 P.2d 375, 381 (Alaska 1998)).

Raymond also argues that the court erred by failing to hold a hearing on his motion. But a hearing is not required when "the facts alleged, even if proved, cannot warrant modification, or if the allegations are so general or conclusory, and . . . refuted by competent evidence" that there is no genuine issue of material fact warranting a hearing.[9] A party seeking a hearing on a motion to modify custody must first make a prima facie showing that circumstances have changed significantly.[10] Only after such a showing has been made is the superior court obligated to hold a hearing.[11]

Much of Raymond's second motion to modify was based on the same allegations that had formed the basis of his first motion. Both motions had largely relied upon his participation in and completion of counseling, which the superior court found, in 2013 and again in 2015, did not amount to a significant change in circumstances. And when it rejected Raymond's allegation that Danté's suicide attempt was a substantial change, the court pointed out that Raymond had proved neither that Danté had attempted suicide nor that, if she had, custody modification would be justified or would ameliorate any concerns about her ability to care for the child.

Raymond's repetition of allegations the court had previously found did not amount to a prima facie showing of a substantial change of circumstances remained insufficient. Without a prima facie showing the court was not required to hold a hearing

---

[9] *Barile v. Barile*, 179 P.3d 944, 946 (Alaska 2008); *see also Acevedo v. Burley*, 944 P.2d 473, 475 (Alaska 1997) ("[E]ven if the facts alleged in the moving papers might demonstrate a material change of circumstances if they were established, the superior court need not conduct a hearing where the moving party advances only 'generalized allegations of factual issues' that other record evidence convincingly refutes." (quoting *Epperson v. Epperson*, 835 P.2d 451, 453 n.4 (Alaska 1992))).

[10] *J.L.P. v. V.L.A.*, 30 P.3d 590, 595 (Alaska 2001).

[11] *Id.*

on Raymond's motion. Raymond never provided proof that the counseling he completed satisfied the settlement agreement's requirement that he complete the Barrow "Domestic Violence Intervention Program." And, as the superior court noted when it denied his first motion, completion of counseling was a condition for his visitation with his daughter. That it was a requirement for *visitation* further supports the superior court's finding that it was not a changed circumstance justifying a change in *custody*.[12]

Raymond's allegations about Danté's mental health, even if proven, were not linked to any allegation that her mental health adversely affected their daughter's welfare. Without a showing that Danté's mental health affected their daughter, Raymond's allegations did not create a genuine issue of material fact requiring a hearing.[13] And his conclusory arguments about the current custody order's interference with the girl's exposure to Filipino language and culture were not sufficient, even if proven, to warrant a hearing. The superior court did not err when it denied Raymond's motion to modify without holding an evidentiary hearing.

We AFFIRM the superior court's decision.

---

[12] *Cf. Collier v. Harris*, 261 P.3d 397, 408 (Alaska 2011) (noting that "a lesser showing is required for a 'change in circumstances' determination when a parent seeks to modify visitation rather than custody").

[13] *See Heather W. v. Rudy R.*, 274 P.3d 478, 482 (Alaska 2012) (holding that changed circumstances are material only when they affect child's welfare).