**Mark S. PEARSON, Appellant,**

v.

**Sara B. PEARSON, Appellee.**

No. S–8973.

Supreme Court of Alaska.

July 7, 2000.

---

Mark S. Pearson, pro se, Soldotna, Appellant.

Kristine A. Schmidt, Kenai, for Appellee.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

## OPINION

PER CURIAM.

### I. INTRODUCTION ·

When Mark and Sara Pearson were divorced, they agreed that Sara would have legal and primary physical custody of their two children. Nine months later, Sara moved from Soldotna to Pennsylvania, and Mark sought modification of the custody arrangement. Although Mark alleged that Sara's decision to move was prompted by her wish to deprive Mark of contact with the children, the trial court found no such motivation and ordered that Sara retain legal and physical custody of the children. Because the trial court did not err in its determination that it was in the best interests of the children to remain with Sara, we affirm.

### II. FACTS AND PROCEEDINGS

Mark and Sara Pearson divorced on April 11, 1997. In granting the divorce, Superior Court Judge Harold M. Brown incorporated the couple's agreement regarding custody matters. The agreement called for Sara to have legal and primary physical custody of the parties' daughter, Jamie, and son, Jonathan. Mark was to have visitation for three weekends a month. The parties followed this custody schedule until January 1998, when Sara moved with her children to Pennsylvania to be with her fiancé, Paul Pozonsky.

After Sara's move, Mark filed a motion to modify custody, contending that Sara's move constituted a "substantial change in circumstances." He also requested that the court

appoint a child custody investigator. Sara opposed both motions and asked the court to revise the visitation schedule in light of her move and her inability to reach an agreement with Mark on a revised schedule. The superior court scheduled an evidentiary hearing for April 30, 1998 to review the best interests of the children and denied Mark's request for a custody investigator.

At the April 30 hearing, Mark announced his intention to move to Pennsylvania in order to live closer to his children, but he made no concrete plans. Due to the changed circumstances, the court determined that "legal custody ... is on the table." Because legal custody was at issue, Sara's counsel expressed her desire to present witnesses to rebut Mark's request to obtain custody. The court heard Sara's testimony but did not make a decision regarding custody because Sara was unable to complete her testimony. The court ordered four weeks of summer visitation for Mark and continued the hearing, which eventually took place on July 2.

Mark moved to Pennsylvania in June. Mark's presence in Pennsylvania caused a great deal of conflict. Sara was suspicious of Mark's intentions. During one visit between Mark and the children, Sara called the hotel where she believed Mark was staying. When she learned that he had checked out, she panicked and called the police, believing that Mark had abducted the children. Although Mark had simply checked into a different hotel, this incident was indicative of the fact that he did not foster a cooperative relationship with his ex-wife. Mark refused to speak with Sara and made it difficult for her to contact the children when they were visiting him.

Sara moved to dismiss the motion for modification on the ground that Mark's move to Pennsylvania made his "changed circumstances" argument moot. In response, Mark filed a motion two days before the July 2 hearing stating that he intended to move back to Alaska and would seek legal and primary physical custody. He also stated that he wanted to present the testimony of an expert witness, Dr. Monty Weinstein, to support his arguments.

At the July 2, 1998 hearing, Judge Brown determined that it was still appropriate to reexamine the question of legal and physical custody. But the court believed it would be prejudicial to Sara to do so on that day because of Mark's sudden decision to move back to Alaska and the impact that his decision would have had on the proceedings. Accordingly, the court rescheduled a custody hearing which eventually took place on August 13, 1998, after Mark's permanent return to Alaska. The court indicated that it would allow Dr. Weinstein to testify at that hearing. Despite the fact that the court had previously denied Mark's request for a custody investigator, the court explained that an investigator was not necessary because neither parent alleged that the other was unfit.

Mark did return to Alaska, and the children visited him and the extended family. The visit was not without conflict, however, because Mark and his parents made it difficult for her to contact him or the children.

At the August 13 hearing, the court heard the testimony of Dr. Mark King on behalf of Sara and Dr. Weinstein on behalf of Mark. Dr. King testified that the children were doing well in the custody of their mother and that the reasons to alter the current arrangement would have to be compelling. Dr. Weinstein testified that the children had a loving relationship with their father. Although Dr. Weinstein had only observed Sara interacting with the children on one brief occasion, he concluded that she was trying to alienate the children from their father. After hearing the experts and Sara testify, the court continued the hearing until September 24. At that hearing, the remaining witnesses, Mark and members of Sara's and Mark's families, had an opportunity to testify.

The superior court issued its decision on October 2, 1998. In determining whether custody should be modified, the court considered the factors prescribed by AS 25.24.150(c). The court found that both parents were capable of acting as primary physical custodians and saw no evidence of any abuse or neglect. The court focused its anal-

ysis on the benefits to the children of remaining with their mother and both parents' ability to foster a relationship with the other parent.[1] Because the court found that Sara had been a capable primary custodian, it concluded that a modification of custody could prove to be damaging to the children. The court also found that Sara was the parent most likely to facilitate a relationship with the other parent.

Although Mark argued that it was in the children's best interest to have regular contact with their extended family living in Alaska, Judge Brown concluded that the desirability of maintaining the children in their present stable environment outweighed the advantage of such contact with extended family.

The court did not modify legal or primary physical custody but did modify the visitation schedule to account for the change in circumstances.

## III. STANDARD OF REVIEW

■ This court will reverse a lower court's decision regarding child custody modification only if the lower court abuses its discretion or if its controlling factual findings are clearly erroneous.[2] A trial court abuses its discretion if it fails to consider factors mandated by AS 25.24.150, assigns too much weight to some of the factors, or considers improper factors.[3] This court reviews the trial court's factual findings under the clearly erroneous standard.[4]

1. See AS 25.24.150(c)(5)-(6).

2. See Horutz v. Horutz, 560 P.2d 397, 399 (Alaska 1977).

3. See Kessler v. Kessler, 827 P.2d 1119, 1119 (Alaska 1992) (per curiam).

4. See West v. Lawson, 951 P.2d 1200, 1203 (Alaska 1998).

5. Cf. Lacy v. Lacy, 553 P.2d 928, 930 (Alaska 1976) (court has discretion to decide whether or not to appoint a guardian ad litem).

6. See House v. House, 779 P.2d 1204, 1207–08 (Alaska 1989).

## IV. DISCUSSION

### A. The Trial Court Did Not Err When It Denied Mark's Request for a Child Custody Investigator.

■ Mark argues that the trial court erred when it refused his request for a custody investigation. But the judge has discretion whether or not to appoint a custody investigator,[5] and Mark has failed to explain how that discretion was abused. The trial court did not order a custody investigation because neither parent alleged the other was an unfit parent. Moreover, the trial court conducted several detailed hearings to determine the best interests of the children and heard from two expert witnesses. We conclude that the trial court did not abuse its discretion when it denied Mark's request for a custody investigation.

### B. The Trial Court Did Not Err in Concluding That Sara's Continuing Custody of the Children Was in Their Best Interests.

A custodial parent's decision to leave the state is a material change in circumstances justifying a hearing to consider the best interests of the children.[6] The trial court held such a hearing in this case and appropriately reexamined the best interests of the children. The court considered all the factors prescribed by AS 25.24.150(c)[7] but focused its analysis on the questions of which parent was more likely to facilitate a relationship with the other parent and which environment would be more stable for the children.[8] Mark alleges that Sara has initiated a campaign to alienate him and his family from the

7. Mark complains that the trial court ignored evidence of domestic violence. But the court heard testimony from both Sara's and Mark's perspectives regarding the alleged incident of domestic violence, and it explicitly found that "there is no evidence of domestic violence, child abuse or child neglect" by either party. Because we defer to the trial court's evaluation of witness credibility, see Monette v. Hoff, 958 P.2d 434, 436 (Alaska 1998), we conclude that the trial court's finding was not clearly erroneous.

8. See AS 25.24.150(c)(5)-(6).

children by moving the children out of Alaska and argues that the children's best interests require that the court award him custody.

    *1. The trial court did not err in finding that Sara was not trying to alienate Mark from their children's lives.*

    ■ The trial court concluded that Sara is "the parent most capable of allowing an open and loving relationship with the other." But Mark argues that the trial court erred when it concluded that Sara was not trying to alienate him from their children's lives.

    To support his argument, Mark asserts that the trial court erroneously disregarded the evidence he presented regarding parental alienation syndrome. He cites a long list of cases from states and Canadian provinces sustaining decisions to admit evidence of the syndrome. But this authority is not relevant because the trial court did admit Mark's proffered evidence. Instead, we read Mark's argument as a challenge to the trial court's factual conclusion that the children did not suffer from parental alienation syndrome.

    The trial court's findings regarding parental alienation syndrome are not clearly erroneous. Although the syndrome is not universally accepted, the trial court heard evidence from two experts, Dr. Weinstein and Dr. King, who both believe that it may occur. But the experts disagreed as to whether the syndrome was present in this case. The trial court analyzed both experts' testimony, concluding that Dr. King based his testimony on more objective observations and was more helpful to the court. Because "[a]ssessment of witness credibility is left to the discretion of the superior court," [9] we will not overturn the trial court's conclusion that Sara was not deliberately alienating Mark and his family.

    Moreover, the court concluded not only that Sara was not attempting to alienate Mark, but that she was the parent most capable of facilitating a loving relationship with the other parent. In making this finding, the trial court referred to the testimony that Mark and his family made it difficult for Sara to contact the children when they were with him. Mark has given us no basis for concluding that the trial court committed a clear error when it found that Sara was the parent more capable of fostering a loving relationship with the non-custodial parent.

    Mark also argues that Sara did not have a legitimate reason for moving to Pennsylvania and that her improper motivation is conclusive evidence that she is attempting to alienate him from their children. But in this case the trial court explicitly found that "there is absolutely *no* evidence in the record that [Sara] moved to Pennsylvania to deprive [Mark] of his right to visitation." Moreover, Mark's argument is not supported by our prior decisions. When the trial court conducts a custody hearing as a result of a parent's move, it should consider all the criteria in AS 25.24.150(c).[10] But "whether there is a legitimate reason for the move" is just one factor in the best interest analysis.[11] In light of the trial court's specific finding regarding Sara's motivation, we conclude that the trial court gave appropriate consideration to that factor.[12]

    *2. The trial court did not err in concluding that the children's interest in remaining in a stable environment favored continuing Sara's custody.*

    ■ The trial court also found that because Sara had been the primary caregiver for the children throughout their lives, the goal of maintaining stability was best served by allowing Sara to retain custody. But

**9.** *Monette,* 958 P.2d at 436.

**10.** *See McQuade v. McQuade,* 901 P.2d 421, 424 (Alaska 1995).

**11.** *Id.* (citing *Lee v. Cox,* 790 P.2d 1359, 1361 n. 5 (Alaska 1990)).

**12.** Mark also argues that because Sara moved to Pennsylvania to be with a married man that the

court has "rewarded [her] for doing something negative." But the fact "that a mother is living with another man in an adulterous relationship does not justify denying her custody absent any indication of adverse effects on the child." *S.N.E. v. R.L.B.,* 699 P.2d 875, 878 (Alaska 1985). And the trial court found no evidence that Sara's relationship is having a harmful effect on the children.

Mark argues that Sara removed the children from their stable environment in Alaska by moving them to Pennsylvania. The trial court, on the other hand, found that the children were in a stable environment despite the move. The court concluded that the countervailing interest of being close to extended family "pales in significance when compared to the desirability of maintaining continuity for these children in their present stable environment." And our prior decisions establish that "stability is often a function of parental attitude and not of geography."[13] Therefore, it was not error for the trial court to conclude that the children's interest in a stable, continuous environment favored their remaining with Sara.

The trial court found that the children's best interests required that they remain with Sara. Because we uphold the trial court's factual findings, and they favor Sara's retaining custody of the children, we conclude that the trial court did not abuse its discretion when it allowed Sara to retain custody.

### C. Mark's Other Claims of Error Do Not Warrant Reversal.

 Mark argues that the trial court exhibited gender bias toward him. He cites as proof of the alleged bias the trial court's finding that Sara's expert was more credible than his expert. But the trial court listed its reasons for finding Dr. King more credible than Dr. Weinstein: Dr. King provided a well-reasoned written report, assumed in his analysis that Mark was a capable parent rather than making judgments about a person he had not observed, and administered objective psychological tests. The record simply does not demonstrate any evidence of gender bias. Indeed, we commend the trial court for its handling of this matter. The trial court offered both parties every procedural protection in considering the custody modification, including a thorough evidentiary hearing, the opportunity to present the testimony of experts, and a prompt decision following the hearing. We conclude that the trial court gave careful consideration to all issues before it and that the court's willingness to ensure that all viewpoints were heard was exemplary.

Mark also claims that the court erred in allowing Sara's fiancé, Paul Pozonsky, to sit at the counsel table during the August 13 hearing because his presence influenced the proceedings.[14] But the only time Pozonsky spoke was to confirm his identity. Mark cites no evidence that Pozonsky's presence altered or prejudiced the proceeding. The trial court did not abuse its discretion when it allowed Sara's fiancé to sit at the counsel table for moral support in the custody proceeding.

### V. CONCLUSION

The trial court did not err when it made the factual determinations underlying its "best interests of the child" analysis. The court also adequately considered the relevant factors in evaluating children's best interests. Accordingly, it was not an abuse of discretion for the court to allow Sara to retain legal and primary physical custody. We therefore AFFIRM.

---

**13.** *McQuade*, 901 P.2d at 426 (quoting *Craig v. McBride*, 639 P.2d 303, 308 (Alaska 1982) (Rabinowitz, C.J., concurring)).

**14.** Pozonsky is a judge in a family court in Pennsylvania.