*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JACQUALINE SCHAEFFER-MATHIS n/k/a JACQUALINE SCHAEFFER, | ) ) ) | Supreme Court No. S-15936 |
| Appellant, | ) ) | Superior Court No. 3PA-11-02658 CI |
| v. | ) ) | O P I N I O N |
| LINUS MATHIS, | ) ) | No. 7211 – October 27, 2017 |
| Appellee. | ) ) ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Vanessa White, Judge.

Appearances: J. Stefan Otterson, Otterson Law Office, Anchorage, for Appellant. Darryl L. Jones, Law Office of Darryl L. Jones, Palmer, for Appellee.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

STOWERS, Chief Justice.

## I.      INTRODUCTION

After nearly ten years of marriage and the birth of two children, a couple separated in 2012. Three years of contentious litigation followed, during which time the father had interim sole legal custody of the children, and the physical custody arrangements were modified multiple times. In 2015 the superior court issued the divorce decree and made findings regarding child custody and property distribution. The mother appeals, raising eight issues. We reverse and remand the superior court's

decision regarding the mother's student loans and, if necessary, for a recalculation of the equitable distribution of the marital estate. We affirm the superior court's decision in all other respects.

## II. FACTS & PROCEEDINGS

### A. Facts

Jacqualine Schaeffer[1] and Linus Mathis married in April 2002, separated in March 2012, and divorced in April 2015. Two children were born of the marriage, one in September 2002 and the other in June 2004. Schaeffer began working part-time toward the end of the marriage, after having been a stay-at-home mother, and she studied interior design online. She moved out of the marital home in October 2011 and filed for divorce the following month. She then moved back into the marital home, and she and Mathis sought marriage counseling. They ultimately separated on March 19, 2012, when Schaeffer allegedly hit Mathis in the head in front of their children, after which he called the police and she was arrested and charged with assault.

### B. Proceedings

#### 1. Interim motions and proceedings

In November 2011 Schaeffer filed for divorce and requested joint legal and shared physical custody of the children. She used a form provided by the court system and did not check the form's box for indicating that she had safety concerns for herself or the children. In March 2012 Mathis filed a petition for a domestic violence protective order, and he filed a response to Schaeffer's complaint and asserted a counterclaim requesting sole legal and primary physical custody of the children because of "a history of domestic violence in this marriage with [Schaeffer] being the abuser." Schaeffer filed

---

[1] Schaeffer's last name during the marriage was Schaeffer-Mathis but has since been restored to Schaeffer.

a reply denying that she had committed domestic violence and alleging that Mathis was "the primary perpetrator of domestic violence in the marriage and parenting relationships." She requested sole legal and primary physical custody.

In April 2012 a hearing on the domestic violence and interim custody issues was held before Superior Court Judge Kari Kristiansen, who found that Mathis testified credibly and that he proved by a preponderance of the evidence that Schaeffer had committed multiple acts of domestic violence against him. The court issued a long-term protective order because the protective order in connection with Schaeffer's pending criminal assault case was not protecting Mathis from contact with Schaeffer. The court ordered Schaeffer to "enroll in a program for the rehabilitation of perpetrators of domestic violence, and a substance abuse treatment program." The court awarded Mathis interim sole legal and primary physical custody and granted Schaeffer visitation.

Schaeffer moved for reconsideration, which was denied; she was also ordered to pay child support. In July 2012 the superior court ordered a custody investigation.

In October Schaeffer filed a motion to modify interim custody based on three alleged substantial changes in circumstances. She alleged that Mathis had been abusive toward her and the children and had regularly failed to meet the children's needs since the entry of the interim custody order, that she had transitioned to full-time employment and her new schedule conflicted with the visitation arrangement, and that she had "complied with and completed her court-ordered anger management and alcohol counseling program requirements." She requested sole legal and primary physical custody of the children or, in the alternative, a shared week-on/week-off custody schedule.

The day after filing that motion, Schaeffer filed domestic violence petitions on behalf of the children. She also appears to have filed a report with the Alaska State

Troopers alleging Mathis caused injury to one of the children, and she filed a report with the Office of Children's Services (OCS). In an October 2012 affidavit Mathis described a State Trooper incident that is consistent with the superior court's later finding that Schaeffer encouraged one of the children "to make false allegations to law enforcement that his father grabbed him by the shoulder leaving a bruise." Regarding the OCS report, Mathis related in the affidavit that a caseworker was sent to the children's school and that the investigation was closed because the caseworker found nothing wrong with the children.

Mathis responded to Schaeffer's motion to modify interim custody, denying the allegations against him but recognizing that Schaeffer "should have expanded visitation to account for her job."

The superior court issued an order modifying interim custody in December 2012. The court noted that both Schaeffer and Mathis had made serious allegations against each other without providing much evidence. The court indicated that Schaeffer had "made some progress toward meeting the assessment and treatment goals" but that she had not demonstrated that she had complied with the requirements. The court granted Mathis continued interim sole legal custody of the children. It set a week-on/week-off interim physical custody schedule to take effect upon Schaeffer providing her substance abuse assessment and two clean urinalysis test results.

The custody investigation ordered in July and was completed in January 2013. The court custody investigator expressed concern that the children may have been coached by Schaeffer because of statements they made to him as well as information from OCS that the older child had reported being coached. Based in part on the concerns about coaching, the custody investigator recommended that Mathis be given sole legal custody. The custody investigator recommended a week-on/week-off physical custody schedule.

In October Mathis moved to modify the interim custody order, which by then had changed to a week-on/week-off schedule; he also moved for a partial no-contact order. The superior court granted the partial no-contact order and reduced Schaeffer's time with the children to three weekends each month.

In April 2014 Schaeffer filed a motion for updates to the custody investigation and modification of interim custody. In light of the children's experiences over the 19 months since the children were interviewed and their alleged increased maturity and ability to express themselves, she requested "a re-interview of the boys and the parents and anyone else that the investigator . . . believes is relevant to any new information the boys may provide." Her attorney filed a supporting affidavit indicating that the attorney had contacted the custody investigator; she reported that the investigator said that it was "not unreasonable to update their interviews" and that completing an update a couple of weeks before trial would be possible if a court order were issued as soon as possible. According to Schaeffer's attorney the investigator "believe[d] that it would also be necessary to re-interview the parents and any others that may be relevant to any new information the children may provide." Mathis opposed the motion, expressing "concern[] about the ongoing attempts to manipulate the children and [the] fact that [Schaeffer's] proposal appears to be a full custody investigation."

The superior court denied Schaeffer's motion to modify interim custody and to update the custody investigation, finding that Schaeffer had "not established a factual basis . . . for subjecting the boys to another [custody investigator] interview."

### 2. The divorce trial

The divorce trial was held before Superior Court Judge Vanessa White in August and September 2014. The superior court heard testimony from a number of witnesses, including Schaeffer, Mathis, and the custody investigator. In April 2015 the court entered the decree of divorce and issued Findings of Fact and Conclusions of Law.

The court distributed the marital estate, awarding the marital home to Mathis and dividing retirement assets and debts. The court cited testimony by Schaeffer regarding student loan debt she incurred during the marriage, but it declined to recognize that debt as marital debt based on (1) lack of documentation, (2) its finding that Mathis credibly testified that he had been told the loans were federally subsidized and did not need to be repaid, and (3) Schaeffer's failure to show that she had completed the course of study the loans were taken out for. The court found that there was no dispute regarding the distribution of personal property and that Schaeffer and Mathis had accomplished that distribution themselves. Because it found that Schaeffer and Mathis both were in good health and had roughly equivalent earning capacities, the court distributed the marital estate equally and required Mathis to make a balancing payment to Schaeffer. Mathis was permitted to deduct child support arrears Schaeffer owed him from that balancing payment.

Regarding child custody, the court addressed Schaeffer's allegations that Mathis was physically and emotionally abusive to Schaeffer and the children and found her allegations not credible. The court found "by a preponderance of the evidence that [Mathis] was the victim of physical violence by [Schaeffer] on the date of the parties' separation." Because the court found that only one act of domestic violence was proved and because that incident did not result in serious injury to Mathis, the court determined that the domestic violence presumption in AS 25.24.150(g) did not apply.[2]

---

[2]     Under AS 25.24.150(g) "[t]here is a rebuttable presumption that a parent who has a history of perpetrating domestic violence against the other parent, a child, or a domestic living partner may not be awarded sole legal custody, sole physical custody, joint legal custody, or joint physical custody of a child." A history of domestic violence is found where "during one incident of domestic violence, the parent caused serious physical injury," or where "the court finds that the parent has engaged in more than one

(continued...)

The court found that both parents were capable of meeting the children's needs but that Mathis was more motivated to focus on the children's needs. The main reason for this determination was the finding that Schaeffer "encouraged the children on more than one occasion to lie to various authorities (law enforcement, counselors) about [their] father's conduct." The court also expressed concern about Schaeffer having "coached the children in an effort to justify her alcohol consumption." And it noted that Schaeffer chose to take personal vacations instead of spending her custodial time with the children twice during the separation prior to trial and had allowed her work commitments to sometimes interfere with her parenting responsibilities for several days.

The court found that Mathis had indicated his willingness to maintain the family home and therefore could provide the children with stability of place. The court expressed some concern that Schaeffer "minimized the problems that alcohol ha[d] caused in her relationships" and that she had consumed alcohol while parenting in the past but gave that factor little weight because of Schaeffer's testimony that she was no longer using alcohol. The court found that Schaeffer's false allegations of domestic violence and decision to involve the children in making such false allegations "suggest[ed] that she [was] less willing than [Mathis] to foster an open, loving and frequent relationship between the boys and their other parent." The court also found that communication between Schaeffer and Mathis regarding the children was "poor to non-existent."

---

[2](...continued)
incident of domestic violence." AS 25.24.150(h).

The court did not address the fact that Judge Kristiansen had earlier found that Schaeffer had committed "multiple acts of domestic violence" against Mathis. Mathis does not cross-appeal this issue, so we express no opinion on Judge White's finding that there was only one act of domestic violence and that the presumption did not apply.

Based on these findings, the court awarded Mathis sole legal and shared physical custody.  Schaeffer appeals, raising eight issues relating to child custody, child support, property distribution, and interim attorney's fees.

## III.    STANDARD OF REVIEW

The superior court has broad discretion in child custody determinations,[3] including decisions regarding custody investigations,[4] and its determinations will be set aside only if "the record shows that [the] controlling findings of fact are clearly erroneous or the court abused its discretion."[5]  A factual finding is clearly erroneous if "a review of the record leaves the court with a definite and firm conviction that the superior court has made a mistake."[6]  An abuse of discretion is found "if the superior court's decision is clearly unreasonable under the totality of the circumstances"[7] or "if the superior court considered improper factors in making its custody determination, failed to consider statutorily mandated factors, or assigned disproportionate weight to

---

[3]    *Borchgrevink v. Borchgrevink*, 941 P.2d 132, 134 (Alaska 1997) (citing *Evans v. Evans*, 869 P.2d 478, 479 (Alaska 1994)).

[4]    *Meier v. Cloud*, 34 P.3d 1274, 1277 (Alaska 2001) ("[T]he desirability of a [custody] report is an issue for the trial court to decide as a matter of discretion on a case-by-case basis."  (citing *Pearson v. Pearson*, 5 P.3d 239, 242 (Alaska 2000))); *Pearson*, 5 P.3d at 242 ("[T]he judge has discretion whether or not to appoint a custody investigator . . . ."  (citing *Lacy v. Lacy*, 553 P.2d 928, 930 (Alaska 1976))).

[5]    *Borchgrevink*, 941 P.2d at 134 (citing *Evans*, 869 P.2d at 479); *see also* *Michele M. v. Richard R.*, 177 P.3d 830, 834 (Alaska 2008) (quoting *Valentino v. Cote*, 3 P.3d 337, 339 (Alaska 2000)).

[6]    *Borchgrevink*, 941 P.2d at 134 (citing *Money v. Money*, 852 P.2d 1158, 1161 (Alaska 1993)); *see also* *Simmonds v. Parks*, 329 P.3d 995, 1007 (Alaska 2014) (quoting *John v. Baker*, 30 P.3d 68, 71 (Alaska 2001)).

[7]    *Meier*, 34 P.3d at 1277 (citing *Tobeluk v. Lind*, 589 P.2d 873, 878 (Alaska 1979)).

particular factors while ignoring others."[8]  "[W]hether the court applied the correct standard in a custody determination is a question of law we review de novo."[9]  "[W]e do not 'readily second guess a trial court's custody determination' because it is 'the function of the trial court, not of this court, to judge witnesses' credibility and to weigh conflicting evidence.' "[10]

Child support awards are reversed "only if the superior court abused its discretion or applied an incorrect legal standard."[11]  Whether the superior court applied the correct legal standard is a question of law, which we review de novo.[12]  We review "factual findings regarding a party's income for purposes of calculating child support for clear error."[13]

---

[8]     *Borchgrevink*, 941 P.2d at 134 (citing *McDanold v. McDanold*, 718 P.2d 467, 468 (Alaska 1986)); *see also Hamilton v. Hamilton*, 42 P.3d 1107, 1111 (Alaska 2002) (citing *Gratrix v. Gratrix*, 652 P.2d 76, 80 (Alaska 1982)).

[9]     *Osterkamp v. Stiles*, 235 P.3d 178, 184 (Alaska 2010) (quoting *Elton H. v. Naomi R.*, 119 P.3d 969, 973 (Alaska 2005)).

[10]     *Michele M.*, 177 P.3d at 834 (first quoting *Dingeman v. Dingeman*, 865 P.2d 94, 96 (Alaska 1993); then quoting *Knutson v. Knutson*, 973 P.2d 596, 599-600 (Alaska 1999)); *see also Ebertz v. Ebertz*, 113 P.3d 643, 646 (Alaska 2005) ("We give 'particular deference' to the trial court's factual findings when they are based primarily on oral testimony, because the trial court, not this court, performs the function of judging the credibility of witnesses and weighing conflicting evidence." (quoting *In re Adoption of A.F.M.*, 15 P.3d 258, 262 (Alaska 2001))).

[11]     *Koller v. Reft*, 71 P.3d 800, 804 (Alaska 2003) (citing *Beaudoin v. Beaudoin*, 24 P.3d 523, 526 (Alaska 2001)).

[12]     *Id.* (citing *Beaudoin*, 24 P.3d at 526).

[13]     *Limeres v. Limeres*, 320 P.3d 291, 295 (Alaska 2014) (citing *Koller*, 71 P.3d at 804).

Both factual and legal questions may be involved in characterizing property as separate or marital for purposes of property distribution.[14] Factual questions include "[u]nderlying factual findings as to the parties' intent, actions, and contributions to the marital estate," which we review for clear error.[15] Legal questions include "whether the trial court applied the correct legal rule in exercising its discretion," and we review such questions "de novo using our independent judgment."[16]

The superior court's decision about whether to award attorney's fees is reviewed for abuse of discretion.[17] The court's award of attorney's fees will not be reversed unless the decision is "arbitrary, capricious, or manifestly unreasonable."[18]

## IV. DISCUSSION

### A. The Superior Court Did Not Abuse Its Discretion By Denying The Request For An Updated Custody Investigation.

Under Alaska Civil Rule 90.6(a) "the court may appoint an expert . . . to investigate custody, access, and visitation issues and provide an independent opinion concerning the child's best interests." The superior court has discretion in deciding whether to appoint a custody investigator[19] and by extension has discretion in deciding

---

[14] *Beals v. Beals*, 303 P.3d 453, 459 (Alaska 2013) (quoting *Odom v. Odom*, 141 P.3d 324, 330 (Alaska 2006)).

[15] *Id.* at 459 (citing *Odom*, 141 P.3d at 330).

[16] *Id.* (quoting *Hanson v. Hanson*, 125 P.3d 299, 304 (Alaska 2005)).

[17] *Beal v. Beal*, 88 P.3d 104, 111 (Alaska 2004) (quoting *Edelman v. Edelman*, 61 P.3d 1, 4 (Alaska 2002)).

[18] *Ebertz v. Ebertz*, 113 P.3d 643, 646 (Alaska 2005) (quoting *Sloane v. Sloane*, 18 P.3d 60, 63-64 (Alaska 2001)).

[19] *See Pearson v. Pearson*, 5 P.3d 239, 242 (Alaska 2000) (citing *Lacy v.*
(continued...)

whether to order an update to an already-completed custody investigation. The court here denied Schaeffer's request for an update to the initial custody investigation based on Schaeffer's failure to "establish[] a factual basis . . . for subjecting the boys to another [court investigator] interview," and Schaeffer fails to show that the denial was an abuse of the court's discretion.

The reasons Schaeffer provided when moving for the update were that a year and a half had passed since the children were interviewed by the custody investigator, that there would likely be new information because of intervening events, and that the children had grown and matured and could express themselves better than when their original interviews were conducted. Based on her attorney's affidavit, which accompanied her motion, she also claimed that the court custody investigator stated he could "have the updated investigation completed approximately three weeks prior to trial."[20] In her brief to this court she reiterates these points. Additionally, Schaeffer cites her own statement from her motion requesting the update, where she wrote that "updated interviews would be greatly meaningful and helpful to the court," but she misattributes that statement as coming from the court custody investigator at the divorce trial. And she claims that the custody investigator testified at trial that it was not unreasonable to update the report, when in fact that statement was from a phone call referenced in the affidavit by Schaeffer's attorney. She argues that under the totality of the circumstances the

_____

[19](...continued)
*Lacy*, 553 P.2d 928, 930 (Alaska 1976)).

[20]    The attorney's affidavit actually states that the attorney asked whether it would be "possible to complete this update a couple of weeks prior to trial" and that the custody investigator responded that it was possible but that "he would need the court order as soon as possible" in order to complete the update by then.

superior "court could not properly address the children's best interests without the update."

Schaeffer fails to recognize that the court had the benefit not only of the already-completed custody investigation but also of witnesses who could provide more recent information, namely, the witnesses who would testify at trial. In addition to testimony by the custody investigator, the court heard testimony by Schaeffer, Mathis, and others.[21] And while Schaeffer anticipated that an updated report could be available shortly before the scheduled trial date, any delay in its preparation would likely have caused the trial to be delayed. The case had already involved several years of contentious litigation, and further delay was not likely to be in the children's best interests. In light of the circumstances as a whole, the trial court did not abuse its discretion when it declined to order an updated report from the custody investigator.

**B.    The Superior Court Did Not Abuse Its Discretion By Not Explicitly Considering The Children's Custody Preference.**

When determining custody, the superior court is required to consider the nine factors under AS 25.24.150(c), but it "need not refer to all of [the factors] in explaining its custody decision" and may choose to discuss only those factors it finds relevant to the case.[22] One of the factors at issue in this appeal is "the child's preference if the child is of sufficient age and capacity to form a preference."[23] A well-reasoned

---

[21]    *See Ebertz*, 113 P.3d at 647. ("[W]e have previously recognized that custody investigators are simply expert witnesses and that their recommendations should be evaluated on a case-by-case basis, in the same manner as testimony presented by other witnesses.").

[22]    *See Rosenblum v. Perales*, 303 P.3d 500, 504 (Alaska 2013) (alteration in original) (quoting *Park v. Park*, 986 P.2d 205, 207 (Alaska 1999)).

[23]    AS 25.24.150(c)(3).

preference by a mature teenager can, in some cases, be a deciding factor.[24] But "in cases where a child does not show maturity or there is evidence that the choices were motivated by bad reasons, the court may choose to disregard the child's preference, or to give it little weight."[25]

Schaeffer argues that the superior court erred in not considering the children's custody preference. The January 2013 custody investigation report reported the children's custody preferences but indicated that "[t]he children [were] not quite at the age where their preferences should start to carry some weight" and that "some of the statements they made and the OCS report raise[d] serious questions about whether they [had] been coached and influenced which would make it impossible to try to understand what their true preferences [were]." Schaeffer argues that the report's mention of the then 8- and 10-year-old children being too young for "their preferences . . . to carry some weight" suggests that the children "may have been able to express a preference by the time of the trial," when they were 10 and 11 years old, respectively.[26] She does not, however, address the concerns about the children potentially having been coached and influenced, making it impossible to determine their true preferences. The court's Findings of Fact and Conclusions of Law do not mention the children's preferences, but they repeatedly refer to Schaeffer's having encouraged the children to lie to various

---

[24] *See Michele M. v. Richard R.*, 177 P.3d 830, 833, 838 (Alaska 2008) (citing *Valentino v. Cote*, 3 P.3d 337, 340-41 (Alaska 2000)).

[25] *Id.*; *see also Jenkins v. Handel*, 10 P.3d 586, 590 (Alaska 2000) (concluding that the superior court did not give too little weight to the preference of a fifteen-year-old and a thirteen-year-old where the court found that "their preferences, and the reasoning behind them, evidenced a great need for parental supervision and were outweighed by their need for . . . 'substantial guidance' ").

[26] The older child turned 12 before the final day of the trial.

authorities about their father's conduct, which suggests legitimate concern by the court about the mother's influence on the children. Given these findings and the children's young ages, we hold that the court did not abuse its discretion by failing to explicitly discuss the children's preferences.

**C.** **The Superior Court Did Not Clearly Err In Its Findings Regarding The Parents' Capability And Desire To Meet The Children's Needs And Of The Love And Affection Existing Between The Parents And The Children.**

Under AS 25.24.150(c)(2) and (4) the court must consider the parents' capability and desire to meet the children's needs and the love and affection between the parents and the children when determining custody. The court found that both parents were capable of meeting the children's needs but that Mathis was more motivated than Schaeffer to focus on the children's needs. According to the court, Schaeffer's decisions to involve the children in the divorce by encouraging them to lie on multiple occasions to various authorities about their father's conduct and by coaching them in an attempt to justify Schaeffer's alcohol consumption "suggest that she is more focused on her own needs than the children's." Schaeffer argues that this information "was based only on fourth hand reports from other agencies, and such summaries of summaries are notoriously liable to error in the retelling." Contrary to this argument, the information about the children possibly having been coached is supported by trial testimony by the custody investigator based on his in-person interviews with the children, and the court did not clearly err in its findings about the children having been coached and encouraged to lie.

The court also noted that Schaeffer twice chose to take personal vacations instead of spending her custodial time with the children and that her "work commitments sometimes have interfered with her parenting responsibilities over several days." Schaeffer claims that the finding about her vacations "is contradicted by facts in the

record demonstrating that Schaeffer's travel was planned before changes in the custody schedule." The record shows she testified that she purchased tickets for her December 2013 Hawaii vacation before changes in the custody schedule, but it also shows Mathis testified that Schaeffer "knew that she had custody" during her April 2013 Hawaii vacation, and Schaeffer's testimony about her April vacation does not contradict that. She ultimately testified that her choice to forgo some of her custody time for her vacation did not mean that she loved the children less. In light of the record, it was not clear error for the superior court to find that Schaeffer "[t]wice . . . elected to take a personal vacation rather than spend her custodial time with the children." The court also did not clearly err in relying on these findings when making the finding that Mathis was more able and motivated to meet the children's needs.

As to the love and affection between the parents and the children, although the superior court decision did not separately analyze this custody factor, it is clear from the record that both parents agree that both of them love and are loved by the children. The court did not clearly err in not explicitly mentioning a factor that plainly favored neither parent, nor in taking its factual finding that Mathis was more motivated than Schaeffer to focus on the children's needs into account in its best interests determination.

## D. The Superior Court Did Not Clearly Err In Discounting Schaeffer's Evidence Of Domestic Violence.

Schaeffer argues that the superior court clearly erred by discounting evidence of domestic violence that would trigger the presumption in AS 25.24.150(g). Contrary to Schaeffer's claim that the "court did not make findings regarding Schaeffer's allegations and sworn testimony regarding Mathis'[s] history of domestic violence," the court specifically found that "all of [Schaeffer's] allegations that [Mathis] was physically or emotionally abusive [were] not credible." The court also indicated that it shared the custody investigator's "serious concerns that [Schaeffer] had instructed [one of the

children] to lie about domestic violence in the home." Because the court's factual finding regarding the credibility of Schaeffer's allegations is "based primarily on oral testimony," it merits "particular deference."[27] And Schaeffer has pointed to nothing in the record that shows this finding to be clearly erroneous. Thus, the court did not clearly err in discounting Schaeffer's evidence of domestic violence.

**E.     The Superior Court Did Not Plainly Err In Determining Child Support Without Certain Supporting Documentation.**

The superior court ordered Mathis to "provide to the court, in the form of a motion, his calculations for child support" and provided that "[Schaeffer] shall have the normal time allowed under [Alaska] Civil Rule 77 to object to [Mathis's] interim child support calculations." Mathis filed proposed child support orders, including supporting documentation and calculations, and Schaeffer did not file an opposition. The court issued its interim child support order on December 7, 2015.

Schaeffer filed a motion for reconsideration, raising for the first time her argument that Mathis did not follow Civil Rule 90.3(a)(1)(A) and (B) because he allegedly "deducted almost twice the amount allowed by the rule for his retirement contributions" and "provided no indication why his deductions would be mandatory beyond the 7.5% allowed under the Rule."[28] And not until her reply brief did Schaeffer argue that there was "no way to determine how much of [Mathis's] payroll deductions are for . . . <u>optional</u> plans" as opposed to mandatory pension deductions. (Emphasis in original.) She argued that "[i]t would be unusual for a pension to take 15% of gross pay," that the "pension deducts $1.50 for every hour worked," and that Mathis's documentation did "not provide the information required by Civil Rule 90.3." The court

---

[27]     *Ebertz v. Ebertz*, 113 P.3d 643, 646 (Alaska 2005) (quoting *In re Adoption of A.F.M.*, 15 P.3d 258, 262 (Alaska 2001)).

[28]     *See* Alaska R. Civ. P. 90.3(a)(1)(B).

-16-                                                          7211

denied Schaeffer's motion for reconsideration, finding that Mathis's "employer-withheld retirement contributions appear to be mandatory, not voluntary, so the 7.5% cap is inapplicable."

Schaeffer argues that her challenge to the child support orders based on the classification of retirement contributions "is reviewable as legal error even though it was first raised on reconsideration." Because "[a]n issue raised for the first time in a motion for reconsideration is not timely,"[29] Schaeffer's argument about the retirement contributions is subject to plain error review.[30] The superior court's finding that the contributions were mandatory does not constitute plain error because it had an evidentiary basis, which included a letter from Mathis's employer stating that "[t]he employee contributions to the retirement plan are required by this collective bargaining agreement and are not optional."[31]

F.      The Student Loans Determination Was Clearly Erroneous.

The superior court "decline[d] to recognize [Schaeffer's] student loans as marital debt," reasoning that

> (a) [Schaeffer] failed to present any documentation as to the
> debts at trial; (b) [Mathis] testified credibly that [Schaeffer]

---

[29]     *Stadnicky v. Southpark Terrace Homeowner's Ass'n*, 939 P.2d 403, 405 (Alaska 1997) (citing *Miller v. Miller*, 890 P.2d 574, 576 n.2 (Alaska 1995)).

[30]     *D.J. v. P.C.*, 36 P.3d 663, 668 (Alaska 2001) ("Plain error exists 'where an obvious mistake has been made which creates a high likelihood that injustice has resulted.' " (quoting *Sosa v. State*, 4 P.3d 951, 953 (Alaska 2000))).

[31]     Schaeffer seeks to raise additional issues regarding the child support calculations that she did not raise until her supplemental brief to this court. We see no plain error in the superior court's failure to consider those issues, and we do not consider them here. *Rodvik v. Rodvik*, 151 P.3d 338, 345 (Alaska 2006) ("[A]s a general rule, we will not consider arguments for the first time on appeal." (quoting *Hoffman Constr. Co. of Alaska v. U.S. Fabrication & Erection, Inc.*, 32 P.3d 346, 355 (Alaska 2001))).

told him the debts were federally subsidized and would not have to be repaid; and (c) [Schaeffer] failed to demonstrate that she completed any course of study for which the loans were taken out and the marital community was not, therefore, likely to benefit from the debts incurred.

Schaeffer argues that "the student loans' existence and value were not disputed facts," that the loans should have been equitably divided, and that whether she earned her degree during the marriage was irrelevant.

It was clear error for the court to find that Schaeffer's students loans were not marital debt. It is undisputed that the student loans were incurred during the marriage. Student loans, like other loans incurred during a marriage, are presumptively marital debt, and "the party claiming otherwise must show that the parties intended it to be separate."[32] Mathis has made no such showing, instead erroneously arguing that Schaeffer had to prove that they intended the debt to be marital. There appears to be no "evidence that [Schaeffer] incurred these debts as part of an agreement that she begin this education at her expense in anticipation of divorce," and therefore "the timing of the loans and the circumstances made these debts subject to an equitable division."[33]

The first reason the court identified for not recognizing the student loans as marital debt is the lack of documentation. However, the record shows that Schaeffer may have submitted documentation: a November 2014 "updated version of the Plaintiff's spreadsheet" says "copy of documentation of specific amount of outstanding [student] loan attached," but the attachment is not in the record. The loans were also listed on Schaeffer's financial declaration, and Schaeffer's proposed marital property division table included entries and amounts for "Federal Student Loans," "AK Student

---

[32] *Richter v. Richter*, 330 P.3d 934, 938 (Alaska 2014) (citing *Stanhope v. Stanhope*, 306 P.3d 1282, 1290 (Alaska 2013)).

[33] *McDougall v. Lumpkin*, 11 P.3d 990, 994 (Alaska 2000).

Loans," and "Art Institute Loan." In *Stanhope v. Stanhope*, we held that "[t]he superior court's conclusion that there was insufficient evidence to prove a marital debt [was] not clearly erroneous" where "the only evidence of amounts was the numbers entered on . . . asset sheets prepared by [one party's] attorney."[34] That holding was also based on there being insufficient evidence to prove "the critical question of whether [the debt] had been 'incurred during the marriage.' "[35] In this case, however, it is undisputed that the student loans were incurred during the marriage.

The second reason the court identified for not recognizing the student loans as marital is that "[Mathis] testified credibly that [Schaeffer] told him the debts were federally subsidized and would not have to be repaid." However, Mathis conceded that the student loans either were loans or, if they were grants, the terms "to get the grants forgiven" had not been complied with, and they needed to be repaid.

The third reason the court identified for not recognizing the student loans as marital is that "[Schaeffer] failed to demonstrate that she completed any course of study for which the loans were taken out and the marital community was not, therefore, likely to benefit from the debts incurred." Under different circumstances, this rationale might relate to the issue of the parties' intent about whether the debt should be marital or separate, since it touches on whether the marital community was likely to benefit from the student loans. However, as already indicated, the presumption that the student loans were marital has not been overcome by a showing of intent to the contrary. Thus, it was clear error for the court not to recognize the student loans as marital debt.

---

[34] 306 P.3d 1282, 1290 (Alaska 2013).

[35] *Id.*

**G. The Superior Court Did Not Clearly Err In Determining There Was No Dispute Regarding The Distribution Of Personal Property.**

Schaeffer argues that the superior court clearly erred in determining that there was "no dispute as to distribution of personal property" and that "[t]he parties ha[d] accomplished this task on their own." She claims that she left the marital home "with only an overnight bag, and has not been able to recover her remaining personal possessions." In support of this assertion she cites only to a single page of the transcript of the April 9, 2012 proceeding, where she had testified that the only possession she had "out of the house" was her overnight bag. But later in that same proceeding the court indicated that it would issue a limited writ of assistance for Schaeffer to retrieve her belongings, allowing her "a trip to the residence accompanied by law enforcement to recover undisputed personal items, clothing, or any other items." Schaeffer's attorney then requested Schaeffer's "clothes, personal belongings, books." And during the final hearing in September 2014, Mathis indicated that Schaeffer could have whatever personal property she wanted out of the house "if she's reasonable." So it appears that she had the opportunity to retrieve the personal possessions that she wanted. Furthermore, she does not identify any property that Mathis has that she wants. In light of this record the superior court's findings regarding the personal property distribution are not clearly erroneous.

**H. The Superior Court Did Not Abuse Its Discretion When Determining The Need For Interim Attorney's Fees.**

Schaeffer argues that it was an abuse of discretion for the superior court not to evaluate the parties' relative economic situations when it denied her motion for interim attorney's fees and that "[t]he superior court should have revived that motion sua sponte upon the termination of Schaeffer's pro bono legal representation." In May 2012 Schaeffer, representing herself, moved for interim attorney's fees, but by the time a

hearing was held addressing her motion she had obtained pro bono legal representation through the Native Justice Center. Her attorney told the superior court that "after this point the attorney's fees issue should not be an issue . . . unless there's a specific issue or a motion." Schaeffer never renewed her motion for attorney's fees even after later becoming unrepresented again. Thus, Schaeffer expressly abandoned her claim for interim attorney's fees before the superior court, and the superior court did not abuse its discretion in denying her motion. Nor did the court abuse its discretion in failing to sua sponte revive the motion after Schaeffer became unrepresented because she did not file a later motion despite her attorney having indicated that it would be an issue only if there were a specific motion.

## V. CONCLUSION

We REVERSE the superior court's property decision regarding the student loan debt and REMAND for further proceedings. Depending on its determination regarding the loan debt, the court may need to adjust its equitable distribution of marital property and debt. In all other respects we AFFIRM the superior court's decisions.