NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

GLEN COLLINS II,

     Appellant,

  v.

JESSICA COLLINS,

     Appellee.

)
)
)
)
)
)
)
)
)
)
)
)
)

Supreme Court No. S-19392

Superior Court No. 3AN-24-04154 CI

MEMORANDUM OPINION
AND JUDGMENT*

No. 2149 – May 27, 2026

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Yvonne Lamoureux, Judge.

Appearances: Glen Collins II, pro se, Eagle River, Appellant. Notice of nonparticipation filed by Jessica Collins, pro se, Palmer, Appellee.

Before: Carney, Chief Justice, and Borghesan, Henderson, Pate, and Oravec, Justices.

## I. INTRODUCTION

A father and mother entered a settlement agreement, adopted by the superior court, which provided for joint legal and physical custody of their three minor children. Seven months after entering the settlement agreement, the father moved to modify custody, alleging that the children's emotional state called for a change in the custody arrangement. The superior court denied the motion, reasoning that the father

---

\*    Entered under Alaska Appellate Rule 214.

had not shown a substantial change in circumstances.  The father appeals.  Finding no abuse of discretion, we affirm the denial of the motion to modify custody.

## II.     FACTS AND PROCEEDINGS

### A.     Facts

Glen Collins II and Jessica Collins married in 2002.  They separated in November 2023 and divorced in April 2024.  Glen and Jessica had four children, including three teenagers that were still minors at the time of divorce and one adult daughter.  The custody arrangement concerns the minor children.

In April 2024, in anticipation of an interim custody order, a court system custody investigator conducted interviews with all three children.  The daughters both expressed in their interviews that they wanted to live with their father, have no contact with their mother, and for their father to have all legal power.  The son also expressed wanting to live with his father and stated that he wanted no contact with his mother "until she stops arguing, stops kicking them out, stops degrading them and admits she was wrong."  The investigator raised concerns that the children were coached before the interviews.  The investigator also noted that "[t]he young adults appear hostile and unforgiving to [Jessica].  Their preferences should carry minimal weight."  The investigator provided this report to both parties and the superior court.

The parties did not obtain an interim custody order.  Instead, two weeks after the children's interviews, Glen and Jessica entered into a formal written settlement agreement.  Relevant to this appeal, the settlement agreement provided that Glen and Jessica would share physical custody of the children through a week-on/week-off schedule.  The agreement further provided that the parties would have joint legal custody.  The agreement also contained a provision that the "custody . . . order[] [is] in the best interest of the [c]hildren."  Both Glen and Jessica signed affidavits that they understood and agreed to the terms of the settlement agreement.  Though there had been no interim custody order, the children were living with Glen before the parties settled on this arrangement.

The parties appeared at a hearing and entered the settlement agreement into the record on April 30, 2024. The parties did not call any witnesses to testify at that hearing. The court entered a final order adopting the agreement that same day.

## B. Proceedings

Glen moved to modify custody seven months later, in November, 2024. In his motion, Glen alleged that there had been a change in circumstances in the children's lives. He asserted that Jessica "leaves [the children] unattended, refuses to let them leave the house and leaves them alone while she goes out with her friends." He also alleged that Jessica told the children that she would not interact with them. Glen requested that the court modify custody by granting him sole decision-making power. He further proposed a schedule giving Jessica every other weekend with the children and "one day during the week when it is not her weekend." In addition, Glen claimed that "the [investigation] that was conducted did not reflect [the children's] position" to the court. He requested that the court talk directly with the children.

In response, Jessica disputed Glen's claims, asserting that Glen "has stated false accusations regarding [her] relationship with [her] children." She explained that she does not leave the children alone for hours, that she seeks to interact with them every day, and that the children do not respond to her efforts to communicate. She alleged that Glen turned the children against her, coaching them "just as was stated in the [investigator's report]." She argued that changing visitation would not be in the best interests of the children.

The superior court held an evidentiary hearing. Before testimony began, the court observed that Jessica and Glen's adult daughter was in the courtroom. Glen explained that the adult daughter was a potential witness, so the judge instructed her to wait in the hallway.

The court began the hearing by explaining that the party seeking to modify custody must demonstrate a substantial change in circumstances that affects the children. When the court prompted Glen to explain the substantial change in

circumstances since the custody agreement, he said: "Definitely the kids' emotional state." Glen testified that the children had told him that they argue constantly with their mother, that Jessica refuses to buy them food, that all three children live in one room, and that the children are left alone when they are at Jessica's home. Glen also reported that during Jessica's most recent week with the kids, she dropped them off on Tuesday, instead of the customary Sunday when the parties would do exchanges. He testified that there was no communication between him and Jessica about this early drop off.

Jessica opened her testimony by saying that "everything that [Glen] said is a lie." She denied refusing to buy her children food and explained that the kids isolate themselves when staying with her. She testified that the children refuse to come out of their room, alleging that they "are worse than they were in the beginning . . . now they are totally withdrawn." Jessica expressed frustration that she does not receive reports about how the children are doing with their schooling and that the children seem to ignore her during her time with them. She accused Glen of not allowing the children to move past the divorce, and suggested that this impacts her relationships with them. She testified that the children should be in counseling and observed that they sit on their phones in their room all day and have made attempts to keep her out of their room. Jessica also testified that the children throw out the food that she buys, that they are well-fed, and that they do not exercise. She requested that the custody arrangement remain the same.

In response, Glen claimed that the children refused to exercise because Jessica did not launder their clothes. He also reiterated concerns about the amount Jessica was feeding the children, saying his adult daughter, who lived with Jessica for a period, could testify about the amount Jessica was feeding the children. He did not call the adult daughter as a witness, however. Glen also testified vaguely about incidents where he heard second-hand about disagreements between the children and Jessica.

After hearing this testimony, the superior court concluded that Glen had not shown a substantial change in circumstances affecting the children's welfare. The court denied Glen's motion accordingly. In addition, the court stressed the importance of Glen and Jessica learning to coparent and offered referrals to mediation. The court encouraged the parties to reset and "be[] the best coparents possible to support the children moving forward."

Glen appeals.[1]

## III.  STANDARD OF REVIEW

The superior court has "broad discretion in deciding child custody issues."[2] We will set aside the superior court's "determination of custody 'only if the entire record demonstrates that the controlling findings of fact are clearly erroneous or that the trial court abused its discretion.' "[3] "A factual finding is 'clearly erroneous when a review of the record leaves us with the definite impression that a mistake has been made.' "[4] "The superior court's 'discretion extends to its determination whether, following an evidentiary hearing, the moving party has proven a substantial change in circumstances, meaning one that affects the child's welfare.' "[5]

---

[1]  Jessica did not participate in this appeal.

[2]  *Wee v. Eggener*, 225 P.3d 1120, 1124 (Alaska 2010).

[3]  *Moeller-Prokosch v. Prokosch*, 99 P.3d 531, 534 (Alaska 2004) (quoting *Hamilton v. Hamilton*, 42 P.3d 1107, 1111 (Alaska 2002)).

[4]  *Rosemarie P. v. Kelly B.*, 504 P.3d 260, 264 (Alaska 2021) (quoting *Dara v. Gish*, 404 P.3d 154, 159 (Alaska 2017)).

[5]  *J.M. v. S.C.*, 552 P.3d 475, 481 (Alaska 2024) (quoting *Collier v. Harris*, 377 P.3d 15, 20 (Alaska 2016)).

## IV. DISCUSSION

### A. The Court Did Not Abuse Its Discretion In Denying The Motion To Modify Custody.

To succeed in a motion to modify custody, the moving party must show: (1) "a change in circumstances that would justify a modification" and (2) "the proposed modification is in the child's best interests."[6] This is codified under AS 25.20.110.[7] The parent seeking modification has the burden of showing a significant change in circumstances that affects the children's best interests.[8] "[O]nly if the parent makes this showing does the court proceed to determine whether modification is in the best interests of the child[ren]."[9] Thus, if a moving parent fails to meet their burden of showing a substantial change, we need not reach the question of whether a change in custody would be in the children's best interests. No substantial change in circumstances has occurred "[i]f current circumstances are similar to those at the time of the most recent custody order."[10]

Glen moved for a change in custody only seven months after the court entered the custody order. He alleged a substantial change of circumstances by claiming that Jessica "neglected" the children "both physically and emotionally." On appeal Glen did not elaborate on how the children were neglected, but he raised three main contentions at the modification hearing: that Jessica did not feed the children, that

---

**6** *Id.* at 482.

**7** *See* AS 25.20.110(a) ("An award of custody of a child . . . may be modified if the court determines that a change in circumstances requires the modification of the award and the modification is in the best interests of the child.").

**8** *Collier*, 377 P.3d at 20.

**9** *Hunter v. Conwell*, 219 P.3d 191, 196 (Alaska 2009) (quoting *Ebertz v. Ebertz*, 113 P.3d 643, 647 (Alaska 2005)).

**10** *Rainer v. Poole*, 510 P.3d 476, 482 (Alaska 2022).

she left them unsupervised for prolonged periods, and that the children's relationship with her had further deteriorated.

Glen testified at the modification hearing based on information the children had allegedly conveyed to him. In response, Jessica testified that the children were "totally withdrawn" because Glen coached the children against her as stated in the custody investigator's pre-settlement report. She directly disputed Glen's accusations about underfeeding and locking the children in the house. However, describing her relationship with the children, Jessica did testify that "my kids were better in the beginning and now they're worse." She testified that the children refuse to speak with her or leave their room when she is home, so she occasionally left the house after work so the children would leave the room. Jessica testified that she continued to be patient with the children and frequently expressed that she loves them, but that they rebuffed her efforts.

The court found that Glen failed to show a substantial change in circumstances since the order adopting the custody agreement. The court did not specifically address whether Jessica was actually underfeeding the children or locking them in the house and leaving for protracted periods. Instead, it explained that:

> These are not new issues. The children were resistant before the parties entered into this agreement. There was a period of time where there was a breakdown. Frankly, going into the reasons why is not productive for moving forward and how to repair the relationship between the children and [Jessica]. The point being that its time to move forward. And it's clear that the children are struggling with this. This has been really hard.

Thus, the court found that Jessica's relationship with the children remained difficult and continued to cause issues.

"[W]hen reviewing the court's order 'we do not parse each alleged factual assertion of change, but instead [we] look to see whether the circumstances in the

aggregate establish a change of circumstances.' "[11] We have previously noted that AS 25.20.110(a) does not require the court to give reasons on the record when it refuses to modify custody.[12] But the court's ruling on the motion to modify custody should address the asserted changes that the court considered important to its decision.[13]

Although more detailed findings are often helpful, the court's decision in this case meets the standard. The court explicitly found that Jessica's strained relationship with the children was an issue at the time of the recent (and only) custody order. In light of the testimony of the parties, the court implicitly concluded that the specific issues resulted from the children's continued resistance to Jessica.[14] The court explained its reason for finding no substantial change in circumstances: The children's resistance to Jessica was an ongoing issue. Considered in the aggregate, the circumstances raised at the hearing were aspects of this basic fact. Therefore, the court did not abuse its discretion in finding that Glen failed to show a substantial change in circumstances.

Because Glen failed to meet his burden of demonstrating a substantial change in circumstances, the superior court did not need to consider the children's best interests.[15] We therefore affirm the superior court's denial of the motion to modify custody.

---

[11]     *Collier*, 377 P.3d at 22 (second alteration in original) (quoting *Heather W. v. Rudy R.*, 274 P.3d 478, 482 (Alaska 2012)).

[12]     *Hanson v. Hanson*, 36 P.3d 1181, 1188 (Alaska 2001).

[13]     *See id.* at 22-23 ("The superior court heard evidence of all Branwen's asserted changes at the hearing; its written order addressed only those it considered important to its decision. It was under no duty to address every one.").

[14]     We observe that at the time the motion to modify was filed, these children were 14, 16, and 17 years of age.

[15]     *Collier*, 377 P.3d at 20.

**B.** **The Court Did Not Abuse Its Discretion In Ruling On Glen's Motion Without Hearing Testimony From The Children.**

Repeatedly citing AS 25.24.150, Glen argues that children have the right to have their custodial preferences heard by the court, that this right was denied at the modification hearing, and that the children's perspectives were not considered. Glen does not argue that the children should have testified about the conditions in Jessica's home; he only argues that the court should have heard the children's custodial preferences from them directly.

Although the children's preferences are one factor a court should take into account when determining the custody arrangement that is in their best interests, the court should not revisit a custody order unless there has been a substantial change in circumstances. And here, Glen did not demonstrate any substantial change, in the children's preference or otherwise.[16]

The court was aware of and did consider the children's preferences when it denied the motion to modify. The children's preference to live with their father was expressed in their interviews with the custody investigator earlier in the year, before their parents signed a settlement agreement that established a custody schedule.[17] All three children indicated that they wanted to live with their father, yet the parents agreed to joint legal custody and shared physical custody and agreed that this would serve the children's best interests. At the hearing, Glen challenged the custody investigator's concerns that the children had been coached to express a preference for him, but he did not allege that their preferences had changed. And Jessica claimed that the children

---

[16]  *Id.*

[17]  Alaska Civil Rule 90.6(d)(2) allows the superior court to consider the custody investigator's report when making its determination on a motion to modify custody. *Mallory D. v. Malcolm D.*, 290 P.3d 1194, 1206 (Alaska 2012).

still did not like her because of Glen's coaching.[18]  Thus, the situation remained unchanged from the custody order.  In these circumstances, the court was not required to hear testimony from the children before deciding whether their continued preference to live with their father warranted custody modification.

Finally, Glen claims that the Rules of Evidence required the court to hear testimony from the parties' adult daughter.  There is no applicable rule of evidence.  Although the daughter was at the courthouse, and the court asked her to step out of the room,[19] it remained Glen's responsibility to actually call the adult daughter as a witness.[20]  It was not, as Glen argues, the court's role to call her for testimony on its own initiative.

## V.    CONCLUSION

For the foregoing reasons, we AFFIRM the superior court's denial of the motion to modify custody.

---

[18]    The best interests statute does not prescribe any method to discern a child's preference nor does it dictate any particular result.  AS 25.24.150(c)(3) ("In determining the best interests of the child the court shall consider the child's preference if the child is of sufficient age and capacity to form a preference. . . .").  And Civil Rule 90.6 provides the court discretion to order that an expert custody investigator provide an independent opinion of the children's best interests.  *Schaeffer-Mathis v. Mathis*, 407 P.3d 485, 492 (Alaska 2017).

[19]    We see nothing improper with this request, which is a valid exercise of the witness exclusion rule.  Alaska R. Evid. 615.

[20]    Alaska R. Civ. P. 46(b) ("Unless otherwise ordered by the court . . . the plaintiff shall . . . introduce evidence, and when the plaintiff has concluded the defendant shall do the same.").